THE STATE, EX REL. BALDRIDGE ET AL., APPELLEES, *v.* CLERK OF THE VILLAGE OF SOUTH LEBANON, APPELLANT.

(No. CA83-09-061—Decided
October 27, 1983.)

*Mr. William G. Fowler,* for appellees.
*Mr. John C. Quinn,* for appellant.

JONES, J. On August 23, 1983, petitioners, Heber D. Baldridge, Larry R. Stanley, and Danny Ray Riley, filed a petition for mandamus in the Warren County Court of Common Pleas, seeking an order which would require the Clerk of the Village of South Lebanon to submit to the Warren County Board of Elections an initiative petition demanding the repeal of an income tax ordinance adopted by the village council. The complaint alleges that the income tax ordinance was adopted November 10, 1982, and that the petitioners prepared, circulated, and filed a petition demanding repeal of said ordinance, or that same be submitted to a vote of the qualified electors of the village.

The complaint further alleges that said initiative petition was signed by the requisite number of qualified electors, and thereafter filed with the village clerk. Finally, the complaint alleges that the village clerk refused to certify the initiative petition to the board of elections.

An answer was filed by the village clerk, and the matter was heard by the court on August 29, 1983. An excerpt of the testimony reveals that one of the signatures on one of the petition papers was placed thereon by someone other than the purported signer. The testimony discloses that a petition paper circulated by Larry Ray Stanley was filed with the clerk and that Stanley signed a verification that he, as circulator, witnessed the affixing of all twenty signatures on said petition paper. Such petition paper indicates on its face that it was signed by Bobby Mullins and Geraldine Mullins on August 11, 1983. During the course of the mandamus hearing, however, it became apparent that Geraldine Mullins signed not only her own name, but that of her husband, Bobby. The testimony further indicates that the circulator was on the porch of the Mullins residence when Geraldine began to sign her name. As she did so, the circulator observed that he had parked his vehicle on the public street in such a way that it might cause a problem. He thereupon left the porch stating, "I'm going to move my van into the driveway." Bobby Mullins agreed that such would be satisfactory, and the circulator thereupon removed his vehicle from the street and parked it in the driveway. When he returned to the porch, for the purpose of retrieving his petition paper, both signatures were affixed, but he was not given any indication that Geraldine had, in fact, signed for Bobby.

The three separate part petitions filed with the village clerk contained the signatures of sixty-three electors of the village. The parties in the lower court agreed that at least fifty-seven valid signatures were required to validate the initiative petition pursuant to R.C. 731.28. The court found that more than ten days had elapsed since the clerk had received the initiative petition, but that the clerk had failed and refused to certify the text of the proposed ordinance. There was an attempt by ten signers of the petition to remove their signatures therefrom, but the trial court found that such attempt was ineffective, in that the attempted removal was untimely — the petition had already been filed with the village clerk. The trial court's ruling on such issue was not assigned as error in this court. The assignment of error reads as follows:

"The court erred in granting a writ of mandamus compelling the village clerk to certify the text of a proposed initiative ordinance to the board of election when one part petition, necessary to establish the requisite number of signatures, contained at least one signature not affixed in the presence of the circulator and the circulator falsely verified that he witnessed the affixing of each signature [*sic*]."

Appellant-clerk further states that the issue presented for review is as follows:

"Whether the circulator's failure to witness the affixing of each signature invalidates the entire petition or only the signature he did not personally witness."

Essentially, appellant contends that the clerk of the village was not required to certify the initiative petition to the board of elections by virtue of the fact that one of the part petitions contained a signature which was improperly affixed to the document. Appellant contends that the one improper signature invalidated the entire part petition, containing twenty signatures, and that the removal of twenty signatures would thereby reduce the total number of valid signatures to less than the statutory requirement.

In a well written decision, the trial court made the following findings:

"The evidence shows that a circulator of one of the part petitions approached a certain husband and wife with the idea of obtaining their signatures for this petition. After discussing the matter for a few minutes, the circulator handed the petition to the wife with the intention that she and then the husband would sign it. While she was signing the petition, he turned his back and left their immediate presence for approximately two minutes. Upon his return, the wife handed back to the circulator the petition ostensibly bearing the signatures of the husband and wife. At trial, the wife testified that she not only signed her own name, but her husband's name also, because her husband told her to. She further testified that she did not think the circulator was aware that the husband had not signed the petition himself. The circulator testified that he was not aware that the wife had signed both names until after the part petition had been filed with the Clerk of the Village."

R.C. 3501.38(F) reads as follows:

"If a circulator *knowingly* permits an unqualified person to sign a petition paper or permits a person to write a name other than his own on a petition paper, that petition paper is invalid; otherwise, the signature of a person not qualified to sign shall be rejected but shall not invalidate the other valid signatures on the paper." (Emphasis added.)

The trial judge found that the circulator did not "knowingly" permit an unqualified person to sign the petition paper, and that the circulator did not deliberately or fraudulently make a false affidavit "in that regard." The trial judge therefore concluded that although the signature of Bobby Mullins should be stricken from the initiative petition, the remainder of the petition paper should not thereby be invalidated.

There obviously was evidence to support the trial court's finding that the circulator did not "knowingly" permit the affixation of the invalid signature. In any event, appellant does not assign as error any claim that the decision of the trial court was against the weight of the evidence. Appellant relies upon *State, ex rel. Zahneis,* v. *Bd. of Elections* (1971), 27 Ohio App. 2d 233 [56 O.O.2d 402], wherein the First District Court of Appeals upheld the Hamilton County Board of Elections in refusing to accept a declaration of candidacy because the circulator of the petition for candidate did not personally see two of the fourteen signatories sign said petition. In *Zahneis,* the circulator signed an affidavit stating that he had witnessed the affixing of every signature, that all signers were to the best of his knowledge and belief qualified to sign, and that every signature

was to the best of his knowledge and belief the signature of the person whose signature it purported to be. To that extent, *Zahneis* is obviously comparable to the facts in the case at bar. The court in *Zahneis,* however, in ruling the candidate off the ballot, based its decision on R.C. 3501.38(E), and did not consider R.C. 3501.38(F). Subsections (E) and (F) are substantially unchanged since the 1971 decision by the First District Court of Appeals. In *Zahneis,* the candidate whose petition was disallowed filed the mandamus action and in his complaint admitted that the circulator of the petition for candidate did not personally see two of the fourteen signatories sign said petition. There is no indication that the circulator did not "knowingly" permit unauthorized signatures. We, therefore, find that *Zahneis* is distinguishable from the case at bar, on the basis that the circulator in the case at bar did not act knowingly.

To hold otherwise would be equivalent to our finding that the term "knowingly," as used in R.C. 3501.38(F), is mere surplusage and that every petition paper would be invalid in the event an unqualified person signed same, under any and all circumstances. Such a decision would undoubtedly facilitate fraud, rather than prevent it. For example, in the case at bar, any person opposed to the initiative election could simply "arrange" to have an unqualified person seek out the circulator and sign the petition. Such unqualified person could easily deceive the circulator, and by such deception thwart the efforts of the voters to have an election.

R.C. 3501.38(E), requiring a circulator to sign a statement under penalty of election falsification, is obviously designed to prevent fraud on the part of a circulator, and severe penalties would be applicable if the circulator knowingly obtained unqualified signatures. R.C. 3501.38(F), however, pertains solely to the *validity* of the part petitions, and it is clear that a circulator should not be prosecuted, nor a part petition declared invalid, absent a *knowingly* fraudulent act by the circulator.

Although not cited as authority, we believe *State, ex rel. Carson,* v. *Jones* (1970), 24 Ohio St. 2d 70 [53 O.O.3d 116], supports our ruling. In *Carson, supra,* relators filed an action in prohibition in an effort to prevent the Portage County Board of Elections from submitting to the electors a local-option question regarding the sale of beer. The board had overruled the protest of relators that one of the part petitions was signed by an unqualified person, with the knowledge of the circulator. There was a stipulation in the Supreme Court that the signature of Jerry Smith thereon was signed by Smith's wife, *with the knowledge and permission* of the circulator. The Supreme Court granted the writ of prohibition, but *only* on the basis of the stipulated fact that the circulator acted "knowingly" in permitting the wife to sign for her husband. *Carson, supra,* therefore implies that if the circulator had not acted "knowingly" in permitting the unqualified signature to be affixed, the court would have denied the writ and permitted the election.

Appellant's assignment of error is overruled.

*Judgment affirmed.*

KOEHLER, P.J., and HOTTLE, J., concur.

HOTTLE, J., of the Highland County Court of Common Pleas, sitting by assignment in the Twelfth Appellate District.