THE STATE EX REL. CITIZENS FOR RESPONSIBLE TAXATION ET
AL. *v.* SCIOTO COUNTY BOARD OF ELECTIONS ET AL.

[Cite as *State ex rel. Citizens for Responsible Taxation v.
Scioto Cty. Bd. of Elections* (1992), 65 Ohio St.3d 167.]

(No. 92–1821—Submitted and decided October 14,
1992—Opinion announced December 9, 1992.)

*Donald J. McTigue,* for relators.

*Lynn Allan Grimshaw,* Prosecuting Attorney, and *Mark A. Leventhal,* Assistant Prosecuting Attorney, for respondents.

---

*Per Curiam.* Relators argue that respondents improperly rejected 172 of their petition signatures on the ground that the signers provided only their post office box number, township and, in some instances, a precinct, and not the road or rural route number which also appears on their voter registration cards. Relators challenge the rejection of five part-petitions containing 122 signatures, which respondents invalidated because circulator statements did not accurately reflect the number of signatures appearing on each part-petition. Relators further contend that respondents improperly rejected fifteen signatures because other signatures on the same part-petition did not appear genuine.

In addition, relators complain that when they presented their petition for filing, respondents' deputy director gave them a list of 117 signers who wanted their names deleted. Relators maintain that the board would not accept the petition until these signers' names were crossed out and that relators attempted to comply. Relators claim that forty-two signatures were improperly struck from the petition because of this list and that efforts to strike these names also contributed to the discrepancies in the circulator statements on the five rejected part-petitions.

For the reasons that follow, we hold that respondents were required to count the 122 signatures on the five rejected part-petitions, but did not disregard the law or abuse their discretion in disqualifying the other 229 signatures. Thus, we deny the writ of mandamus because relators remain fifty-four signatures short of the number required for this issue to appear on the ballot.

## Voting Address

R.C. 3501.38(C) provides:

"Each signer shall place on the petition after his name the date of signing and the location of his voting residence, including the street and number if in a municipal corporation or the rural route number, post office address, or township if outside a municipal corporation. The voting address given on the petition shall be the address appearing in the registration records at the board of elections."

Respondents invalidated 172 signatures because the signers did not provide their street or rural route number that appears on their voter registration

cards, in addition to their post office box number, township, and, in some cases, their precinct. Relators argue that the post office box number is the "post office address" for these signers, that the signers were easily identified as electors by their post office box number and township, and that a street or rural route number is just another way to provide the same information. Relators also assert substantial compliance and that respondents abused their discretion by rejecting these signatures, as they have previously accepted signatures on nominating petitions where the signer placed only a post office box number and township after his or her name.

We cannot accept substantial compliance as a means to save these signatures. The settled rule is that election laws are mandatory and require strict compliance. *State ex rel. Evergreen Co. v. Bd. of Elections* (1976), 48 Ohio St.2d 29, 2 O.O.3d 126, 356 N.E.2d 716; *State ex rel. Senn v. Bd. of Elections* (1977), 51 Ohio St.2d 173, 5 O.O.3d 381, 367 N.E.2d 879. Substantial compliance is acceptable only when an election statute expressly permits it. *State ex rel. Saffold v. Bd. of Elections* (1970), 22 Ohio St.2d 63, 51 O.O.2d 95, 258 N.E.2d 112; *Stern v. Bd. of Elections* (1968), 14 Ohio St.2d 175, 43 O.O.2d 286, 237 N.E.2d 313; *State ex rel. Wolson v. Kelly* (1966), 6 Ohio St.2d 67, 35 O.O.2d 85, 215 N.E.2d 719 (substantial compliance with form for declaration of candidacy and nominating petition allowed by R.C. 3513.07). Accord *State ex rel. Green v. Casey* (1990), 51 Ohio St.3d 83, 85, 554 N.E.2d 1288, 1290–1291; *State ex rel. Esch v. Lake Cty. Bd. of Elections* (1991), 61 Ohio St.3d 595, 597–598, 575 N.E.2d 835, 836.

R.C. 3501.38(C) does not permit substantial compliance, and the pertinent 172 signatures clearly did not strictly comply. The signers did not provide their "voting residence," as a post office box mailing address is not used to "determine the precinct in which * * * [an elector] may vote." R.C. 3501.-01(P). See, *e.g., Kyser v. Cuyahoga Cty. Bd. of Elections* (1973), 36 Ohio St.2d 17, 65 O.O.2d 93, 303 N.E.2d 77, syllabus, appeal dismissed (1974), 415 U.S. 970, 94 S.Ct. 1547, 39 L.Ed.2d 863 ("A post office box number can not be used to fulfill the requirement of 'residence' in R.C. 3503.01 by a person attempting to register to vote.") Thus, the pertinent signers also did not place on the petition their address which appears on the registration records of the board of elections. In a related case, *In re Protest Filed by Citizens for the Merit Selection of Judges, Inc.* (1990), 49 Ohio St.3d 102, 551 N.E.2d 150, paragraph three of the syllabus, we said:

"A board of elections may disqualify a signature on an initiative petition circulated pursuant to R.C. Chapter 3519 where the residence indicated by a signer is not the same as the residence on record with the board of elections for said signer."

We acknowledge that the signers in this case came closer to complying with R.C. 3501.38(C) than did the signers in *In re Protest*, who had moved from the address indicated on their voter registration cards. Here, the signers supplied information that respondents had on record and could have used to confirm the validity of their signatures. Thus, we consider whether respondents must, in effect, correct the failure to identify a signer's voting address, where this is possible from the registration records.

Although not cited by the parties, *State ex rel. Buchanon v. Stillman* (1967), 12 Ohio St.2d 13, 41 O.O.2d 151, 231 N.E.2d 61, establishes that respondents have discretion to overlook such deficiencies. There, a board of elections accepted the signatures on a local-option petition as valid, but the petition was later protested on the ground that the circulator affidavits did not include the statement " 'that to the best of * * * [the circulator's] knowledge and belief all signers of the petition were qualified to sign the same.' " *Id.* The board rejected the protest, and we refused to grant a writ of prohibition to prevent the issue from appearing on the ballot. We held that the lack of this statement in the circulator affidavits was no longer a defect once the board determined that the signatures were valid. However, we also recognized that the board would have been justified in relying on the defect to invalidate the petition, stating:

"Section 3501.38(E), Revised Code, provides that 'every petition paper shall bear the affidavit of the circulator * * * that all signers were to the best of his knowledge and belief qualified to sign.' Therefore, where the circulators' affidavits to such petitions do not contain such statements, the board of elections can for that reason determine that the petitions are invalid, and it can thereby save the time and expense of checking the signatures and of determining that the signers thereof were qualified to sign." *Id.* at 14–15, 41 O.O.2d at 152, 231 N.E.2d at 62.

*Buchanon* leads us to relators' argument that respondents employed a "double standard" and abused their discretion by overlooking defective voting addresses on nominating petitions, but not on relators' initiative petition. Respondents explain that they were instructed by the Secretary of State not to count signatures on initiative petitions which provided only a post office box number as the voting address. Relators reply that the rules for nominating and initiative petitions are the same under R.C. 3501.38 and should be enforced the same way.

The record indicates that respondents have, apparently with some regularity, accepted signatures that did not comply with the voting-residence requirement in R.C. 3501.38(C). However, under R.C. 3501.11(P), respondents must "[p]erform such * * * duties as are prescribed by law or the rules of the

secretary of state." Respondents, therefore, had a duty to follow the Secretary of State's instruction, absent a showing that the order had no statutory basis. *State ex rel. Sagebiel v. Montgomery Cty. Bd. of Elections* (1944), 144 Ohio St. 162, 166, 29 O.O. 259, 261, 57 N.E.2d 661, 663.

Relators have not made this showing. An elector's voting residence is not determined by his post office box number, R.C. 3501.01(P), and R.C. 3501.38(C) requires a voting residence for petition signatures to be counted as valid. Accordingly, we cannot compel respondents' acceptance of these 172 signatures.

### Circulator Statements

Respondents rejected part-petition Nos. 27, 43, 51, 65, and 85 because the accompanying circulator statements indicated one more signature than each part-petition actually contained. The signature totals for part-petition Nos. 27, 43, 51, and 65 were higher than those on the circulator statements because some signatures had been crossed out in response to the board of elections' list of signers who had asked for the removal of their names. With respect to part-petition No. 85, it does not appear from the copy provided in the record that any signatures were crossed out; however, the parties stipulate that the discrepancy in this circulator's statement also stemmed from the list of names to be removed.

R.C. 3501.38(E) provides that:

"On each petition paper the circulator shall indicate the number of signatures contained thereon, and shall sign a statement made under penalty of election falsification that he witnessed the affixing of every signature, that all signers were to the best of his knowledge and belief qualified to sign, and that every signature is to the best of his knowledge and belief the signature of the person whose signature it purports to be."

Relators assert that a petition paper may be invalidated only pursuant to R.C. 3501.38(F), which states:

"If a circulator knowingly permits an unqualified person to sign a petition paper or permits a person to write a name other than his own on a petition paper, that petition paper is invalid; otherwise the signature of a person not qualified to sign shall be rejected but shall not invalidate the other valid signatures on the petition."

Respondents reply that a circulator's statement does not comply with R.C. 3501.38(E) if it does not correctly state the number of signatures on a part-petition. They also argue that a part-petition may be rejected for this reason under R.C. 3501.39, which provides, in relevant part:

"The secretary of state or board of elections shall accept any petition described in section 3501.38 of the Revised Code unless one of the following occurs:

" * * *

"(C) The * * * petition violates the requirements of this chapter, Chapter 3513 of the Revised Code or any other requirements established by law."

Relators rely mainly on *State ex rel. Dennis v. Miller* (1971), 28 Ohio St.2d 1, 57 O.O.2d 62, 274 N.E.2d 459, which held that once a board of elections certifies a petition as valid, the petition cannot be invalidated by the addition of another signature, and *State ex rel. Keyse v. Sarosy* (1963), 175 Ohio St. 237, 24 O.O.2d 383, 193 N.E.2d 269, which held that a board of elections cannot reject a petition containing seventeen signatures, two of which had been crossed out, for the reason that the circulator indicated "falsely" in his affidavit that the petition contained seventeen signatures. Respondents cite *State ex rel. Loss v. Lucas Cty. Bd. of Elections* (1972), 29 Ohio St.2d 233, 58 O.O.2d 488, 281 N.E.2d 186, which held that a board of elections may reject a petition where the circulator does not comply with the R.C. 3513.07 and state the number of signatures appearing on the petition. The *Loss* court reasoned:

"In our view, the requirement of R.C. 3513.07, that the circulator state in the jurat the number of signatures personally witnessed by him, is a protection against signatures being added later. As such, it is a substantial, reasonable requirement. It is the function of the legislative branch and not within our province to pass upon the wisdom of such a provision." *Id.* at 234, 58 O.O.2d at 488–489, 281 N.E.2d at 187.

Consistent with respondents' argument, R.C. 3501.38(I) provides that "[n]o alterations, corrections, or additions may be made to a petition after it is filed" and, thus, permits the adverse inference that circulators must correctly state the pertinent number of petition signatures. See, *e.g., State ex rel. Clinard v. Greene Cty. Bd. of Elections* (1990), 51 Ohio St.3d 87, 88, 554 N.E.2d 895, 896 (R.C. 3513.08, read in conjunction with R.C. 3501.38[I], requires that candidates correctly state on their declaration of candidacy the commencement date of the term sought). R.C. 3501.38(E), however, does not expressly mandate a correct signature total, and *Loss* implies that arithmetic error will be tolerated, but only if the error does not promote fraud. Indeed, *Loss* may explain why the Secretary of State instructed respondents here to reject an entire part-petition only where the circulator states a number "*less* than the total number of *uncrossed out* signatures" (emphasis *sic*) and to, in effect, overlook discrepancies in the number of signatures "in all other instances."

Respondents disregarded this instruction by rejecting all the signatures on part-petition Nos. 27, 43, 51, 65 and 85, which contained circulator statements

indicating signature totals higher than the number of "uncrossed out signatures." In doing so, respondents acted contrary to R.C. 3501.11(P) and to the Secretary of State's interpretation of R.C. 3501.38(E). Respondents, however, do not oppose this interpretation or attempt to otherwise justify their decision to ignore it.

We, therefore, accept the Secretary of State's reading of the signature-total requirement, see *State ex rel. Beck v. Casey* (1990), 51 Ohio St.3d 79, 81, 554 N.E.2d 1284, 1286, and conclude that respondents improperly rejected the instant five part-petitions for noncompliance with R.C. 3501.38(E). Thus, respondents had a duty to count these signatures toward the total number needed to place this levy decrease on the ballot.

### Signature Authenticity

Respondents rejected the signatures of fifteen electors on part-petition No. 16 because other signatures on that petition did not appear genuine. More specifically, four signatures suggested that two signers had signed for their spouses, and three signatures looked as if one signer had signed for a spouse and a third person. The circulator nevertheless declared, under penalty of election falsification, that he had "witnessed the affixing of every signature" and that each signature was "to the best of [his] knowledge and belief the signature of the person whose signature it purports to be."

As mentioned, R.C. 3501.38(F) provides that a part-petition is invalid if a circulator "knowingly" permits a person to sign a name other than his own. Similarly, R.C. 3501.38(D) states, in part:

"No person shall write any name other than his own on any petition. No person may authorize another to sign for him. * * * "

Relators argue that respondents could not completely reject part-petition No. 16 just because some signatures did not match the voter registration cards. They maintain that this was a basis for invalidating the false signatures, but not all the signatures on that part-petition. Relators rely on *State ex rel. Gongwer v. Graves* (1914), 90 Ohio St. 311, 324, 107 N.E. 1018, 1022, *State ex rel. Pucel v. Green* (1956), 165 Ohio St. 175, 59 O.O. 237, 134 N.E.2d 154, *State ex rel. Baldridge v. Clerk* (1983), 12 Ohio App.3d 158, 12 OBR 482, 467 N.E.2d 905, and *State ex rel. Donofrio v. Henderson* (1965), 4 Ohio App.2d 183, 33 O.O.2d 237, 211 N.E.2d 854, all of which establish that an entire part-petition may not be rejected on the basis of false signatures without evidence that the circulator knew the signatures were false.

Respondents reply that knowledge is proved by the similarly written signatures and the circulator's statement. Their argument has merit. *State ex rel. Waltz v. Michell* (1931), 124 Ohio St. 161, 164–165, 177 N.E. 214, 215–216, held

that when petition signatures are written in the same hand and a circulator attests that he witnessed each signature and that each signature is that of the person it purports to be, a board of elections may infer fraud. The *Waltz* court concluded:

"We * * * [agree] that the requirements that the name of a signer to such petition be written by himself is mandatory, and that signing petitions by proxy is not permissible. In each of these instances [where petition papers were rejected because a circulator had attested to the authenticity of different signatures in the same handwriting] the affidavits must have been intentionally and knowingly false, and under the *Graves case, supra* [90 Ohio St. 311, 107 N.E. 1018], their rejection was warranted." *Id.*, 124 Ohio St. at 165, 177 N.E. at 215–216.

Consistently, *State ex rel. Carson v. Jones* (1970), 24 Ohio St.2d 70, 72, 53 O.O.2d 116, 117, 263 N.E.2d 567, 568, held that "knowingly" is used in R.C. 3501.38(F) to mean that "one is aware of existing facts." There, a circulator permitted a signer's wife, with the signer's consent, to sign his name on a local option part-petition. We ruled the entire part-petition invalid, explaining:

"The statute clearly prohibits one person from signing the name of another and provides that if this is done with the knowledge of the circulator that whole part petition is invalid." *Id.*

At the hearing on their protest, relators here did not attempt to show that the pertinent signatures were genuine or that the circulator did not know the signatures were false. Accordingly, respondents properly rejected part-petition No. 16 and all the signatures it contained.

### The List of Names to be Removed from the Petition

Before relators filed their petition, respondents' deputy director supplied a list of signers who had asked, apparently in writing, for their names to be removed. Relators claim that respondents refused to accept their petition until the names were deleted, that respondents did so to circumvent R.C. 3501.38(G) (circulator may remove his signature from petition before filing) and (H) (signer may remove any name before filing), and that their actions manifest bias.

We disagree. Respondents heard testimony on this issue at the hearing on relators' protest. They credited the deputy director's testimony—that she supplied a list of names, but did not say the names had to be stricken before the petition would be accepted—over contrary testimony from one of relators. Respondents had authority to make this determination. Moreover, we note that relators filed their petition after striking only forty-two signatures, less than half the 117 names on the list, and this suggests to us that the deputy

director's testimony was more reliable than relators' witness. Thus, we are not persuaded to issue a writ against respondents on this basis.

Based on the foregoing, relators have shown that respondents were required to count the 122 signatures on the five rejected part-petitions, but they are still short of the additional 176 signatures needed for us to grant relief. The writ of mandamus, therefore, must be denied.

*Writ denied.*

MOYER, C.J., SWEENEY, HOLMES, DOUGLAS, WRIGHT, H. BROWN and RESNICK, JJ., concur.