DECISION AND JUDGMENT ENTRY
{¶ 1} Relator, the educational resource center, successor agency to the county board of education, passed a resolution on November 4, 2002, proposing a new local school district composed of the Village of Peebles and surrounding townships in Adams and Highland Counties. [Relator's Exhibit A] The resolution was adopted under authority of R.C.3311.26.
 {¶ 2} On December 2, 2002, residents of the proposed school district filed petitions with relator seeking a referendum on the resolution. [Relator's evidence, Jenkins affidavit, ¶ 11] R.C. 3311.26
authorizes such a referendum. On December 3, 2002, relator delivered the petitions to respondent, "for purposes of reviewing said petitions and advising Plaintiff-Relator as to whether said petitions met the sufficiency requirements of R.C. 311.26." [Id., ¶ 12]
 {¶ 3} Subsequently, respondent found that of 1108 signatures on 54 separate petitions, 697 were invalid, 647 of these because they failed to state the signer's city, village, or township of residence. [Respondent's Exhibits 2 and 4] The 647 signatures were disqualified on authority of instructions from the Secretary of State, the state's chief election officer. The instructions state in part that, "The signer must have entered his street and number, or RFD, and his city, village, or township." [Respondent's Exhibit 3] The number of signatures invalidated for this reason caused the petitions to have fewer valid signatures than the required number — 35% of the qualified voters voting at the last general election. If allowed, the 647 signatures invalidated for this reason would have been sufficient, when added to the 411 valid signatures, to exceed the required 35%. [Jenkins affidavit, ¶¶ 15-16]
 {¶ 4} On December 9, 2002, relator's governing board adopted Resolution No. 373-02, stating, in part: "* * * BE IT THEREFORE RESOLVED, in accordance with the provisions of Section 3311.26 of the Ohio Revised Code, that this Governing Board hereby certifies its proposal of November 4, 2002, for the creation of a new local school district to the Adams County Board of Elections for the purpose of having the proposal placed on the ballot on May 6, 2003 in accordance with law * * * [Relator's Exhibit B]"
 {¶ 5} The effect of the resolution was to reject respondent's disqualification of the 647 signatures. Nevertheless, on December 16, 2002, respondent voted to reject the petitions "due to lack of valid signatures required by Ohio Revised Code 3311.26." [Respondent's Exhibit 9] It so advised relator by letter of December 17, 2002. [Relator's Exhibit C] By letter of December 23, 2002, relator requested that respondent reconsider its decision, citing 1962 OAG 3196, in which the Attorney General advised that a county school board, not the board of elections, had authority to determine the sufficiency of referendum petitions under R.C. 3311.26. [Relator's Exhibit D] Respondent refused to reconsider its decision. [Relator's Exhibit E]
 {¶ 6} On January 29, 2003, relator brought this action to compel respondent to place the issue on the May 6, 2003 primary ballot. Relator contends that R.C. 3311.26 authorizes it, not respondent, to determine the sufficiency of referendum petitions under R.C. 3311.26, and it having declared such petitions sufficient and certified them to respondent, respondent has only the ministerial duty to place the issue on the ballot. Respondent argues that the general election statutes give it authority to determine the sufficiency of the signatures and petitions and to place, or not place, the issue on the ballot.
 {¶ 7} On February 10, 2003, respondent filed a motion to dismiss the complaint for failure to state a claim on which relief may be granted. By entry of May 5, 2003, we converted the motion to a motion for summary judgment and permitted the parties to file evidence pursuant to Civ.R. 56(C) and to file supplemental argument, if desired. The parties did so. Accordingly, the cause is before the court on respondent's motion for summary judgment.
 {¶ 8} Civ.R. 56(C) provides, in part: "* * * Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor."
 {¶ 9} Because we find that respondent has established that it, and not relator, has the final authority to determine the sufficiency and validity of referendum and petitions submitted to respondent pursuant to R.C. 3311.26, and that signatures submitted without indicating the signer's city, village, or township of residence are invalid, we grant respondent's motion for summary judgment and deny the writ.
 {¶ 10} Respondent argues that it has the ultimate authority to determine the sufficiency and validity of referendum petitions, citing R.C. 3511.01(K): "Each board of elections shall exercise by a majority vote all powers granted to the board by Title XXXV of the Revised Code, shall perform all the duties imposed by law, and shall do all of the following: * * * (K) Review, examine and certify the validity and sufficiency of petitions * * *." Respondent also argues that since 1962 OAG 3196 was written, the General Assembly has enacted R.C. 3501.38 and R.C. 3501.39. R.C. 3501.38 speaks directly to petitions, not to which agencies or political subdivisions have authority to determine their sufficiency and validity. It states, in part: "(C) Each signer shall place on the petition after the signer's name the date of signing and the location of the signer's voting residence, including the street and number if in a municipal corporation, or the rural route number, post office address, or township if outside a municipal corporation. The voting address given on the petition shall be the address appearing in the registration records at the board of elections."
 {¶ 11} R.C. 3501.39, entitled "Unacceptable Petitions," states in part: "(A) * * * a board of elections shall accept any petition described in section 3501.38 of the Revised Code unless one of the following occurs: * * * (3) The * * * petition violates the requirements of this chapter, Chapter 3513. of the Revised Code, or any other requirements established by law."
 {¶ 12} Under R.C. 3501.39(A)(3), a violation of R.C. 3501.38(C) would be a violation of a requirement of "this chapter.
 {¶ 13} In support of the primacy of these statutes, respondent cites State ex rel. Williams v. Iannucci (1988), 39 Ohio St3d 292,530 N.E.2d 869. The case concerned the interpretation of R.C. 731.28, a municipal initiative statute. It required petitions to be first filed with the city auditor or village clerk, and required the auditor or clerk, after ten days, to "certify" the text to the board of elections which would then "submit such proposed ordinance or measure for the approval or rejection of the electorate at the next succeeding general election * * *."
 {¶ 14} After receiving the petitions, the city auditor refused to certify the petitions, charging facial deficiencies in the petition, failure to file a required document with the petitions, and unconstitutionality of the proposed ordinance. The Supreme Court held: "* * * we find a basic lack of authority for the auditor to refuse to certify the text of a proposed ordinance for any of the objections he has made. R.C. 731.28 prescribes a duty in the auditor to certify a proposal to the board of elections if `signed by the required number of electors * * *.' 39 Ohio St.3d at 293." The court also stated: "We construe R.C.731.28 to confer on the auditor only the ministerial duty to certify to the board of elections the text of a proposal for which sufficient signatures have been obtained. We construe R.C. 3501.11(K) to confer on boards of elections authority to review the sufficiency and validity of petitions under relevant statutes. Id., at 294"
 {¶ 15} Thus, the court held that authority to "certify" petitions to the board of elections conferred only a "ministerial duty," in effect circumscribing the auditor's authority.
 {¶ 16} In 1991, the General Assembly amended R.C. 731.28 to give city auditors and village clerks limited discretion to determine the "sufficiency and validity" of petitions before certifying them to the board of elections. It made the same change to the municipal referendum statute, R.C. 731.29. In State ex rel. Sinay v. Sodders (1997),80 Ohio St.3d 224, 230, 685 N.E.2d 754, a city auditor refused to certify initiative petitions to the board of elections, claiming they violated certain election requirements of R.C. Chapter 3519. The Supreme Court held that the amendments to R.C. 731.28 now gave the auditor limited discretionary authority to determine the sufficiency and validity of petitions, but did not restrict a board of election's duty to act under R.C. 3501.11(K), 3501.38, and 3501.39. 80 Ohio St.3d at 232. The court held that, although the auditor had a new limited discretion that a writ of mandamus could not control, mandamus would lie to arrest an abuse of that discretion. It then characterized the auditor's refusal to certify the petitions based on requirements of R.C. Chapter 3519., which manifestly applies only to statewide petitions, as an abuse of that discretion.
 {¶ 17} Relator dismisses Williams and Sinay on grounds that they are municipal cases and not on point. However, we believe that the cases clearly demonstrate that in this analogous situation, in which R.C. 3311.26
granted authority to relator, the agency that first received petitions, to "certify" them to the board of elections, the authority did not confer plenary authority to approve the sufficiency and validity of the petitions that relator claims. Specifically, we note that, in Sinay, even after the General Assembly clearly granted additional authority to determine the sufficiency and validity of petitions to the office first receiving them, the court did not construe the new authority as divesting a board of elections of its general authority to review the sufficiency of petitions without express language: "If the General Assembly had intended to completely divest boards of elections, which are the local authorities best equipped to gauge compliance with election laws, of their authority to determine the sufficiency and validity of these petitions, it would have done so with unambiguous language. Since it did not do so, the General Assembly must have intended that boards of elections retain this authority, as specified in R.C. 3501.11(K) and 3501.39. Sinay,80 Ohio St.3d 224, 231, 685 N.E.2d 754, 760. See also, State ex rel.Ryant Commt. v. Lorain Cty. Bd. of Elections (1999), 86 Ohio St.3d 107,112, 712 N.E.2d 696."
 {¶ 18} Relator argues, contra, that R.C. 3311.26 authorizes an educational service center to determine the sufficiency and validity of referendum petitions and assigns to a board of elections only the mandatory, ministerial duty of taking the necessary actions to place the referendum on the appropriate ballot once the center has made that determination. The relevant part of R.C. 3311.26 states: "A petition of referendum filed under this section shall be filed at the office of the educational service center superintendent. * * * If a petition is filed, the governing board [of the educational service center] shall, at the next regular meeting of the governing board, certify the proposal to the board of elections for the purpose of having the proposal placed on the ballot at the next general or primary election which occurs not less than seventy-five days after the date of such certification, or * * * Upon certification of a proposal to the board or boards of election pursuant to this section, the board or boards of election shall make the necessary arrangements for the submission of such questions to the electors of the county or counties qualified to vote thereon, and the election shall be conducted and canvassed and the results shall be certified in the same manner as in regular elections for the election of members of a board of education."
 {¶ 19} Relator relies for the meaning of this passage on 1962 OAG 3196, which concluded: "1. The duty of determining the sufficiency of the form, content, and signatures of a petition of referendum filed under Section 3311.26, Revised Code, is invested in the county board of education. * * * 3. Where, under Section 3311.26, Revised Code, a board of elections certifies a proposal to the board of elections, the board of elections has the duty to prepare the ballot to be submitted to the electors * * * *."
 {¶ 20} Relator makes various arguments for its view of its authority under R.C. 3511.26. We consider each.
 I. "Plain-Language" Argument Construing R.C. 3311.26 {¶ 21} Relator first argues that the plain language of R.C. 3311.26, authorizing it to "certify" the petitions, leaves respondent with a mandatory duty to place the issue on the ballot. However, we find that the meaning relator gives "certify" here is refuted by Williams, supra, in which the Supreme held that the term to convey only a "ministerial" duty and did not divest a board of elections from exercising its general election authority to determine the sufficiency and validity of petitions. Moreover, even when the city auditor was given limited authority to determine the sufficiency and validity of petitions, the court held that a board of elections was still not divested of its general authority absent express statutory language to that effect,Sinay, supra.
 {¶ 22} Relator further argues that "[n]othing in R.C. 3311.26
gives the board of elections the authority to reject a petition that is certified to it by the educational service center. Sinay answers this contention. R.C. 3501.39 gives respondent authority until the General Assembly specifically divests it of that authority.
 I.Argument Based on Comparison of R.C. 3511.26 to Other Referendum Statutes in R.C. Chapter 3511. {¶ 23} Relator argues that five other referendum statutes in R.C. Chapter 3311. clearly indicate the primary authority of the board of elections to determine the sufficiency and validity of petitions. It contrasts this authority with that of R.C. 3311.26 where the educational service center is authorized to "certify" petitions, and the board of elections is required only to "make the necessary arrangements for the submission of such question to the electors * * * *." Relator concludes that the General Assembly could clearly have given respondent the superior authority in R.C. 3311.26, but did not. It also cites 1962 OAG 3196 as reasoning to just such a conclusion.
 {¶ 24} Relator's argument here has some surface attraction. Nevertheless, as stated above, it places too much reliance on its authority to "certify" the petitions as being conclusive. "Certify" is, at best, ambiguous in this context. Thus, if six conceptually related statutes exist, and five clearly delineate authority, but a sixth is ambiguous, it does not necessarily follow that the ambiguous statute must mean the opposite of the clear ones, although it is some evidence a different meaning may have been intended.
 {¶ 25} R.C. 1.49 states that if a statute is ambiguous, a court may consider, among other things, the "consequences of a particular construction." To accept the construction urged by relator refutes bothWilliams and Sinay and imports an unwarranted meaning to relator's duty to "certify" the petitions to respondent. A more rational construction would be to construe respondent's duty to "make the necessary arrangements" to place the issue on the ballot as including its general authority to review the sufficiency and validity of petitions. Moreover, we re-emphasize that, in Sinay, the Supreme Court held that boards of elections retain their general authority to determine the sufficiency and validity of petitions unless the General Assembly clearly divests them of that authority.
 {¶ 26} Accordingly, we reject this argument.
 I.Argument that R.C. 3501.38(C) Does Not Require Writing City, Village, or Township on Petition {¶ 27} Relator first argues that R.C. 3501.38(C place on the petition * * * the location of the signer's voting residence" requires only that the signer place on the petition the street and number, rural route number, or post office address, but not the municipality or township of residence. However, the provision seeks to determine the) does not even require city, village, or township to be listed. Again, R.C. 3501.38(C) states: "(C) Each signer shall place on the petition after the signer's name the date of signing and the location of the signer's voting residence, including the street and number if in a municipal corporation or the rural route number, post office address, or township if outside a municipal corporation. The voting address given on the petition shall be the address appearing in the registration records at the board of elections."
 {¶ 28} Relator construes this section to mean that "shalllocation of the signer's voting residence. Thus, the municipal corporation or township of residence are primary to that purpose and the street and number inside a municipality, and rural route number or post office address outside, also required, are refinements to determining that location.
 {¶ 29} We find support for this conclusion in respondent's Exhibit 3, attached to the affidavit of Lois Nichols, Director of the Adams County Board of Elections. The exhibit is a directive from the Secretary of State entitled: "INSTRUCTIONS AND CODE SYMBOLS FOR VALIDATINGSIGNATURES ON PETITIONS, and states, in part: "NANo address. The signer must have entered his street and number, or RFD, and his city, village, or township. He need not have entered the name of his county if it can be determined what county he is from by the other information given."
 {¶ 30} "[W]hen an election statute is subject to two different, but equally reasonable, interpretations, the interpretation of the Secretary of State, the state's chief election officer, is entitled to more weight." State ex rel. Herman v. Klopfleisch (1995),72 Ohio St.3d 581, 586, 651 N.E.2d 995. According "more weight" to the Secretary of State's interpretation, we find that a signer's city, village, or township of residence is required to validate his or her signature on a referendum petition submitted under R.C. 3311.26, and that respondent correctly interpreted the law.
 {¶ 31} In further support of its position, relator cites Blakemorev. Nasal (1991), 74 Ohio App.3d 382, 599 N.E.2d 298. In this case, many signers of a municipal zoning referendum petition omitted writing the name of the municipality on the petition. The court of appeals held that, since only one jurisdiction was involved, the petitions substantially complied with R.C. 3501.38(C), especially since the director of the local board of elections testified at trial that she had no difficulty determining which signers were qualified voters without the municipality being written down by the signer's other residence information. 74 Ohio App.3d at 384.
 {¶ 32} However, the case indicates the opposite conclusion that relator draws from it. Clearly, if the case had involved multiple jurisdictions, as the instant case does, the director presumably would not have been able to locate the signers' voting residences without difficulty, and the court would have been hard-pressed to find sufficient compliance with R.C. 3501.38(C). Moreover, this practical, sensible decision is contradicted by the Secretary of State's instruction, quoted above, and seems to have been impliedly overruled by State ex rel.Citizens for Responsible Taxation v. Scioto Cty. Bd. of Elections
(1992), 65 Ohio St.3d 167, 169, 602 N.E.2d 615, 617, which held that strict compliance, not merely substantial compliance, is required under R.C. 3501.38(C).
 {¶ 33} Accordingly, we reject this argument.
 I.General Versus Special or Local Statutory Provisions on Same Subject {¶ 34} Relator argues that R.C. 3501.11(K)'s grant of authority to review the sufficiency and validity of petitions and R.C. 3501.39's authority for boards of elections to refuse to accept petitions that are in violation of the election laws are general statutes superceded by the special statute, R.C. 3311.26 (as interpreted by relator). Relator correctly identifies which statute is general and which is special, and its contention is part of a cannon of statutory construction, but only a part. The full cannon is codified in R.C. 1.51: "If a general provision conflicts with a special or local provision, they shall be construed, ifpossible so that effect is given to both. If the conflict between the provisions is irreconcilable, the special or local provision prevails as an exception to the general provision, unless the general provision is the later adoption and the manifest intent is that the general provision prevails. (Emphasis added)"
 {¶ 35} Sinay, supra, presents a clear example of construing a general provision and a special provision so that effect is given to both. In Sinay, the special provision, R.C. 731.28, did give limited authority of the city auditor to determine the sufficiency and validity of petitions, but the court held that without express language, it did not divest boards of elections of their general authority to also determine their sufficiency and validity under R.C. 3501.11(K) and 3501.39, thus reconciling the provisions. Therefore, although relator might have prevailed on this issue if we had also found that R.C. 3311.26 invests relator with authority to determine the sufficiency and validity of petitions under R.C. 3311.26 and that the authority granted under that section is irreconcilable with the authority granted to respondent under R.C. 3501.11(K) and R.C. 3501.39. Instead, however, we hold that the statutes are reconcilable because relator does not have the authority it claims under R.C. 3311.26.
 V.Relator as Well as Respondent May Enforce R.C. 3501.38(C)/Not an Abuse of Discretion Not to Disqualify Signatures {¶ 36} Relator argues that R.C. 3501.38(C) is a general provision directed specifically at the content of petitions, and that it could be enforced by someone other that the board of elections if granted authority to determine the sufficiency and validity of petitions, such as it claims under R.C. 3311.26. We agree with relator's contention in theory, but having held that respondent has the ultimate authority to determine the sufficiency and validity of signatures and petitions, this argument is moot.
 {¶ 37} Relator also argues that, assuming it had authority to accept or reject the signatures in question, it did not abuse its discretion by accepting them. We have already determined that R.C.3501.38(C), properly construed, requires signers to write their city, village, or township of residence on the ballot, this argument is rejected. Our construction of the statute accords with respondent's and the Secretary of State's. Even assuming relator had authority to determine the sufficiency and validity of the signatures without the city, village, or township of residence, by passing Resolution No. 373-02 and, in effect, approving such signatures, it would have committed legal error, and thus, in mandamus, could not establish a clear right to relief. Abuse of discretion is not involved. See State ex rel. Citizensfor Responsible Taxation, supra, at 168-171.
 {¶ 38} Thus, we find that none of relator's challenges establishes its clear right to approve the sufficiency and validity of the referendum petitions, or shows that respondent has a clear duty to approve the petitions. On the contrary, we find that respondent has authority to determine the sufficiency of the relevant signatures and, ultimately, to determine the sufficiency and validity of the referendum petitions. Accordingly, we find that respondent is entitled to summary judgment as a matter of law, and its motion for summary judgment is GRANTED. Having granted respondent's motion for summary judgment, it follows that relator has not established the clear right to relief required for a writ of mandamus to issue. State ex rel. Burger v. McMonagle (1983),6 Ohio St.3d 28, 451 N.E.2d 225. Therefore, the writ is DENIED. SOORDERED. Costs taxed to relator.
Harsha, J. Kline, J.: Concur in Judgment and Opinion.