CLAY, Circuit Judge,
concurring in part and dissenting in part.
I agree with Judge Gibbons that the combined burden from Ohio’s petition deadline and primary election cycle unconstitutionally burdens minor political parties seeking to qualify candidates for the Ohio general election ballot. I therefore join that portion of Judge Gibbons’ opinion which addresses this issue. I write separately because I believe that Plaintiffs’ complaint that Ohio’s strict compliance rule unconstitutionally burdens First Amendment freedoms is not moot. Ohio’s rejection of Plaintiffs’ petition on highly technical grounds presents significant constitutional questions about the electoral process that this Court should address on the merits.
I.
BACKGROUND
Plaintiffs sought to qualify the Libertarian Party as a “minor political party” under Ohio law in time for the 2004 presidential election cycle. This qualification would have enabled the Libertarian Party candidates to hold a primary to nominate a presidential candidate and to list the candidates’ party affiliation on election ballots. To qualify, Plaintiffs had to file a petition containing the signatures of at least 32,290 Ohio voters with the Ohio Election Commission by November 3, 2003.
Beginning in April 2001, Plaintiffs began circulating a petition to garner the necessary signatures. On October 30, 2003, Plaintiffs filed a petition containing 57,150 Ohio voter signatures. By letter dated November 24, 2003, Defendant rejected Plaintiffs’ petition because the petition was not on the form prescribed by Defendant and did not contain the correct election falsification notice. Ohio law requires strict compliance with all election requirements, unless another standard is specifically set forth by statute. See State ex rel. Citizens for Responsible Taxation v. Scioto County Bd. of Elections, 65 Ohio St.3d 167, 602 N.E.2d 615, 617 (Ohio 1992).
*596 Ohio Revised Code § 3517.011 provides that the petition “shall be on a form prescribed by the secretary of state.” In addition, Ohio Revised Code § 3501.38(J) requires that “[a]ll declarations of candidacy, nominating petitions, or other petitions under this section shall be accompanied by the following statement in boldface capital letters: WHOEVER COMMITS ELECTION FALSIFICATION IS GUILTY OF A FELONY OF THE FIFTH DEGREE.” More generally, § 3501.38 sets forth requirements for petitions filed with the Secretary of State. That section states, in pertinent part:
(B) Signatures shall be affixed in ink. Each signer may also print the signer’s name, so as to clearly identify the signer’s signature.
(C) Each signer shall place on the petition after the signer’s name the date of signing and the location of the signer’s voting residence, including the street and number if in a municipal corporation or the rural route number, post office address, or township if outside a municipal corporation. The voting address given on the petition shall be the address appearing in the registration records at the board of elections.
Ohio Rev.Code § 3501.38.
Plaintiffs’ petition did not contain the above-referenced election falsification notice as it currently exists in the Ohio code. Rather, Plaintiffs’ petition contained the form of the notice that was in force prior to August 28, 2001, on which date the Ohio legislature changed the penalty for election falsification from a misdemeanor of the first degree to a felony of the fifth degree. See State ex rel. Vickers v. Summit County, 97 Ohio St.3d 204, 208, 777 N.E.2d 830 (2002). Plaintiffs’ notice read: “THE PENALTY FOR ELECTION FALSIFICATION IS IMPRISONMENT FOR NOT MORE THAN SIX MONTHS, OR A FINE OF NOT MORE THAN ONE THOUSAND DOLLARS.” (J.A. at 16.) In addition, Plaintiffs’ petition was not on the exact form promulgated by the Ohio Secretary of State. Plaintiffs’ form differed in two ways. First, the “Circular Statement,” whereby the circulator of the petition attests to the petition’s validity, is before the signatures on the Plaintiffs’ form, whereas the Secretary of State’s form has this statement at the end of the signatures. Second, the Plaintiffs’ form has three additional columns, one for the signatory to print his last name, and two columns for the signatory to indicate his ward and precinct. The forms are the same in all other respects, and all information called for on the Secretary of State’s form is included on the Plaintiffs’ form. Plaintiffs point out that their form provides a space for the signer to print his last name, as expressly permitted by Ohio Revised Code § 3505.38(B) (“Each signer may also print the signer’s name, so as to clearly identify the signer’s signature.”), something that would be difficult to do on the Secretary of State’s form, which does not provide a space. Plaintiffs also aver that they began circulating the petition in April 2001, four months prior to the change in law that modified the election falsification notice; therefore, when Plaintiffs began their petition drive the election falsification notice on their petition form was correct.
II.
ANALYSIS
A. Plaintiffs’ Strict Compliance Claim Presents Significant Issues in Election Law
Plaintiffs assert significant issues in connection with Ohio’s strict compliance requirement. Plaintiffs claim that the rejection of their petition on such technical *597 grounds unconstitutionally burdens their speech and associational rights by unnecessarily restricting access to the Ohio ballot. Ohio’s interests in a regular and orderly election process would be readily met, Plaintiffs argue, by requiring substantial compliance with election laws in lieu of the system of strict compliance that Ohio now employs. The Libertarian Party avers that the party’s petition subverted Ohio election law requirements neither substantively nor proeedurally and should have been accepted by the state. Plaintiffs point out that the formatting changes did not significantly alter the petition form, and that the out-dated election falsification notice served the state’s purpose in informing potential violators of the significant criminal penalty for election fraud. Under Plaintiffs’ analysis, when the consequence for such de minimis errors is so complete and far-reaching — a complete bar to ballot access and the concomitant impact on the associational interests of the party’s potential voters — the burden on constitutional rights exceeds the marginal interest of the state in a strict, versus substantial, compliance system. Moreover, Plaintiffs assert that strict compliance presents unique concerns when employed in the context of party qualifying petitions. Major political parties do not need to submit such petitions, having qualified for the ballot through their demonstrated ability to garner votes in past election cycles. Only minor political parties seeking access to the Ohio ballot are required to submit a qualifying petition, and therefore only minor political parties can be kept off the ballot for de minimis errors in their petitions.
Plaintiffs’ allegations represent serious concerns with the Ohio election system. These concerns deserve treatment on their merits by a full panel of this Court. Moreover, a decision on the merits of Plaintiffs’ strict compliance claim would serve the interests of everyone involved by reducing any uncertainty as to the constitutionality of Ohio’s election regime as the state moves forward toward the next election cycle. This review is within our power, because, contrary to the majority’s assertion, Plaintiffs strict compliance claim is not moot.
B. Plaintiffs’ Strict Compliance Claim Is Not Moot
There are at least three ways in which Plaintiffs’ injury is “capable of repetition:” 1) the Libertarian Party could (a) once again begin circulating a petition prior to a change in election law, causing a significant number of signatures to be invalid because they are not on a form either prescribed by the Secretary of State or containing the correct election falsification language as of the date of submission, or (b) make a different, yet similar, clerical mistake that Ohio law does not forgive; 2) the individual Plaintiffs, in their capacity as electors, could experience the same restriction in electoral choice as a result of the Secretary of State’s use of Ohio’s strict compliance requirement to reject a minor party’s petition in the future; and 8) another minor political party may make the same mistake as the Libertarian Party in the instant case, experiencing the same injury as the Libertarian Party.

1. Mootness Jurisprudence

This Court has a continuing obligation to address only live controversies. If “the issues presented are no longer live or parties lack a legally cognizable interest in the outcome,” then the case is moot and the Court must dismiss. Los Angeles County v. Davis, 440 U.S. 625, 631, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979). An exception to the mootness doctrine exists for wrongs that are “capable of repetition, yet evading review.” See Moore v. Ogilvie, 394 U.S. *598 814, 815, 89 S.Ct. 1493, 23 L.Ed.2d 1 (1969). Generally, a wrong is “capable of repetition, yet evading review” when (1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation or a demonstrated probability that the controversy will recur. Honig v. Doe, 484 U.S. 305, 318-19 n. 6, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988); see also Weinstein v. Bradford, 423 U.S. 147, 149, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975). There is no dispute that the election cycle is too short a duration to enable election-law disputes to be fully litigated during that time period. See Ogilvie, 394 U.S. at 815, 89 S.Ct. 1493; Lawrence v. Blackwell, 430 F.3d 368, 371 (6th Cir.2005) (“Challenges to election laws are one of the quintessential categories of eases which usually fit within [the evading review] prong .... ”).
The Supreme Court clarified what it takes to show a “reasonable expectation” that the wrong will recur in Honig, 484 U.S. at 319-20, 108 S.Ct. 592. The Honig Court held that a 20-year old who was no longer enrolled in the California public school system, but who remained eligible for educational services through his 21st birthday, presented a non-moot challenge to the state’s implementation of the Education of the Handicapped Act. Id. The Court expressly rejected the proposition put forth by dissenting Justice Scalia that a “reasonable expectation” was equivalent to a “demonstrated probability.” Id. at 320 n. 6, 108 S.Ct. 592. Instead, the Court looked at its past jurisprudence and concluded that it had found “controversies capable of repetition based on expectations that, while reasonable, were hardly demonstrably probable.” Id. The Court went on to note that “[o]ur concern in these cases, as in all others involving potentially moot claims, was whether the controversy was capable of repetition and not ... whether the claimant had demonstrated that a recurrence of the dispute was more probable than not.” Id. (emphasis in original).
This Court has recognized that a “reasonable expectation” is something less than “more probable than not.” See Lawrence, 430 F.3d at 371 (“The Supreme Court has stated that the purpose of the second prong is to determine ‘whether the controversy was capable of repetition and not ... whether the claimant has demonstrated that a recurrence of the dispute is more probable than not.’ ” (quoting Honig, 484 U.S. at 319 n. 6, 108 S.Ct. 592)). In Lawrence, this Court found that there was a “reasonable expectation” that a candidate for a now-past election would wish to run as a candidate in future elections, despite no assertions in the record of any intent to do so. Id. Other circuit courts of appeals also follow the Supreme Court’s direction that a “reasonable expectation” is something less than a demonstrated probability. See Russman v. Bd. of Educ., 260 F.3d 114, 120 (2d Cir.2001); Miller ex rel. NLRB v. Calif. Pac. Med. Ctr., 19 F.3d 449, 454 (9th Cir.1994); Reich v. Local 30, Int’l Bhd. of Teamsters, 6 F.3d 978, 985 n. 8 (3d Cir.1993); ACLU v. The Florida Bar, 999 F.2d 1486, 1496 (11th Cir.1993); Hernandez v. Cremer, 913 F.2d 230, 233-34 (5th Cir.1990).

2. There Is a Reasonable Expectation That Plaintiff's Will Make the Same, or Similar, Mistakes in the Future

In the instant case, the Libertarian Party failed to include the up-to-date election falsification notice on its petition and altered the Secretary of State’s version of the petition in order to include more information. There is no evidence in the record, nor do the circumstances suggest, that the Libertarian Party made these mistakes in a deliberate attempt to challenge Ohio’s strict compliance with election laws re *599 quirement. Rather, the mistakes were merely that — mistakes. And these mistakes occurred despite the fact that the Libertarian Party has a decades-long history of organization and demonstrated ability to field presidential candidates, at least on some states’ ballots. The majority opinion concludes that the Libertarian Party is unlikely to make the same mistake in the future with the incorrect election falsification notice and therefore that Plaintiffs have failed to show a “reasonable expectation” that the wrong will recur. This conclusion rests on unreasonably high expectations of the Libertarian Party’s competence and construes the issue too narrowly.
If the Libertarian Party, despite its relative sophistication in comparison to other minor political parties, inadvertently made not one, but at least two mistakes on its petition for the 2004 presidential election cycle, then it is reasonable to believe that the party will make an error on a petition in the future. Obviously, the party’s nationwide and statewide organizational capabilities did not prevent the mistakes in this past election cycle. The personnel that populate the organizational apparatus of a political party’s machine are often, by necessity, seasonal. Moreover, many political workers are volunteers, and turnover is frequently high. To say that the Libertarian Party is unlikely to make a mistake on the petition form in the future is to ascribe perfect organizational memory to the organization’s members. The instant case is unlike prior cases in which the courts have said that we will not usually assume that a party will deliberately violate the same law in the future. See Honig, 484 U.S. at 320, 108 S.Ct. 592. This is not a matter of willful violation, but rather inadvertent mistake. It is entirely reasonable to expect that the Libertarian Party may submit an imperfect petition in the future.
Finally, Plaintiffs ask this Court to decide whether “Ohio’s requirement that petition forms comply strictly with applicable statutes” unconstitutionally burdens Plaintiffs’ First and Fourteenth Amendment rights. (Pl.Br.2.) While in the instant case the strict compliance requirement resulted in the petition’s rejection as premised on the election falsification language and the form modification, in the future the Libertarian Party may make similar, although not identical, mistakes. Therefore, even were the Libertarian Party’s organizational memory perfect insofar as the election falsification notice goes, there are many other ways in which the Libertarian Party could submit an imperfect petition that the Secretary of State may reject pursuant the Ohio Revised Code § 3517.011 (requiring all petitions to be on the form prescribed by the Secretary of State). Plaintiffs may very well remember to double check the election falsification language in the future. They may even remember not to include additional columns for the inclusion of what the party considers useful information. It is reasonable to expect, however, that similar, if not identical, mistakes will be made in future petitions. It is unclear, for example, whether the inclusion of additional columns and the movement of the circulator statement would have resulted in the rejection of Plaintiffs’ petition in the instant case, if the election falsification notice were not in issue. Certainly, as argued by the state of Ohio, the Secretary of State would have been within his authority to reject the petition for such mistakes because the petition was not on the form as prescribed by the Secretary. A future circulator may, for example, move the circulator statement to the start of the second page in order to fit page formatting requirements of a computer program. If this issue is moot in the instant case, the courts are endowing Ohio’s Secretary of *600 State with plenary, unreviewable authority to determine whether a petition is on the properly prescribed form.
This Court has every reason to believe that the Libertarian Party will continue their long tradition in Ohio of attempting to qualify candidates for the ballot. In argument to this Court, Ohio insists on its strict compliance requirement and its application to the election falsification notice and the form of the petition. There is every reason to believe that Ohio will continue to reject any petition which does not precisely conform to its requirements. This Court should have a reasonable expectation that the Libertarian party will suffer the same fate with respect to a future petition.

3. There Is a Reasonable Expectation That in Their Capacity as Electors, the Individual Plaintiffs May Be Deprived of Electoral Choices in the Future Due to Ohio’s Strict Compliance Requirement

The individual Plaintiffs also sue in their individual capacity as electors “who want to support and vote for the political party plaintiff and its candidates.” (J.A. at 6.) Ohio maintains its adherence to strict compliance with its election laws. Given the possibility that the Libertarian Party, see supra, and other minor political parties, see infra, will make a mistake on a petition and be refused a spot on an Ohio ballot, there is a reasonable expectation that, as electors, the same “complaining parties” will be deprived of electoral choices in the future. Therefore, insofar as the individual Plaintiffs sue as electors, and not candidates, the strict compliance requirement issue is not moot. Compare Corrigan v. Newaygo, 55 F.3d 1211, 1213-14 (6th Cir.1995) (finding a challenge to a local election ordinance not moot with respect to the two voter-plaintiffs, who complained of a restriction in their electoral choices), with Speer v. City of Oregon, 847 F.2d 310, 312 n. 3 (6th Cir.1988) (finding the case moot when the plaintiff sued only as a candidate and not as a voter).

I. There Is a Reasonable Expectation That Other Minor Political Parties Will Make the Same or Similar Mistakes in the Future

Normally, the “capable of repetition, yet evading review” exception to mootness requires that the dispute be capable of repetition between the same parties, ie., “there is a reasonable expectation that the same complaining party will be subjected to the same action again.” Weinstein, 423 U.S. at 149, 96 S.Ct. 347. Yet the Supreme Court, this Court, and several of this Court’s sister circuits have relaxed the same party requirement in the election law context, and looked instead to whether there is a reasonable expectation that the same type of plaintiff may suffer a similar injury in the future:
The fact that the controversy almost invariably will recur with respect to some future potential candidate or voter in Ohio is sufficient to meet the second prong because it is somewhat relaxed in election cases. Courts have applied the capable of repetition yet evading review exception to hear challenges to election laws even when the nature of the law made it clear that the plaintiff would not suffer the same harm in the future.
Lawrence, 430 F.3d at 372.
Despite its history of successful compliance with Ohio’s election laws, the Libertarian Party included the incorrect election falsification notice on its October 2003 petition and improperly modified the Secretary of State’s petition form, both of which provided grounds for the rejection of the party’s more than 57,000 collected signatures. It is reasonable to expect that oth *601 er minor political parties, many not as experienced as the long-standing Libertarian Party, will make similar mistakes in the future. Variations on the Ohio petition form can very easily happen through inadvertence. Moreover, Ohio’s requirement that the petitions be “on the form prescribed” by the Secretary of State is not completely unambiguous. Computer programs reproduce such forms for widespread dissemination. A less well informed volunteer may very easily make formatting changes to make the petition easier to read, reproduce, or distribute and still believe that the resulting petition is “on the form prescribed” by the state. In the instant case, the Libertarian Party merely added three columns and moved the circulator statement in order to enable the election falsification notice to appear on the same page as the signatures. The party seems to have believed that the petition was still “on the form prescribed” by the state. But as the instant case demonstrates, the party was wrong. There is, therefore, a reasonable expectation that a similarly situated party will make the same, or similar, mistake as that made by the Libertarian Party in the 2004 election cycle and run afoul of Ohio’s strict compliance requirement.
III.
CONCLUSION
There is a reasonable expectation that the Libertarian Party or some other minor political party will be refused access to the Ohio ballot in the future because of arguably de minimis errors in their party petition. Plaintiffs present significant concerns about the burden placed on First Amendment freedoms by Ohio’s insistence on strict compliance with its petition requirements, concerns which should have been treated on the merits by this Court. I therefore respectfully dissent from the majority’s conclusion that the strict compliance issue is moot.