THE STATE EX REL. CITIZENS FOR RESPONSIBLE TAXATION ET
AL. *v.* SCIOTO COUNTY BOARD OF ELECTIONS ET AL.

[Cite as *State ex rel. Citizens for Responsible Taxation v.
Scioto Cty. Bd. of Elections* (1993), 67 Ohio St.3d 134.]

(No. 92–1821—Submitted June 15, 1993—Decided July 28, 1993.)

*Donald J. McTigue,* for relators.

*Lynn Alan Grimshaw,* Scioto County Prosecuting Attorney, and *William K. Shaw, Jr.,* Assistant Prosecuting Attorney, for respondents.

---

*Per Curiam.* In *State ex rel. Citizens for Responsible Taxation v. Scioto Cty. Bd. of Elections* (1992), 65 Ohio St.3d 167, 602 N.E.2d 615, we denied a writ of mandamus to compel respondents, the Scioto County Board of Elections and its individual members, to submit a proposed levy decrease to voters at the 1992 general election. We held that relators, Citizens for Responsible Taxation and member Virginia Froman, had not filed an initiative petition containing a sufficient number of valid signatures.

The parties in *Citizens for Responsible Taxation* stipulated that 2,403 valid signatures were required to place the issue on the ballot pursuant to R.C. 5705.261. After our decision, however, they discovered that respondents had calculated this number incorrectly. In new stipulations of fact, these parties now agree that relators' petition actually contained the requisite number of valid signatures when originally filed, such that the levy decrease should have been approved for the 1992 general election ballot. Thus, relators now ask for relief from the judgment entered in *Citizens for Responsible Taxation, supra,* and, further, that respondents be ordered to place the issue on the 1993 general election ballot. Respondents have not opposed either request.

Respondents miscalculated the signature requirement because they referred to the gubernatorial election in 1990 to determine the number of valid signatures required by R.C. 5705.261. This statute, however, states that petitions proposing

a levy decrease "shall be signed by at least ten per cent of the qualified electors residing in the subdivision and voting at the *last general election.*" (Emphasis added.)

Froman discovered the mistake when she obtained the official abstract of the 1991 general election in Scioto County from respondents. The abstract indicated that the total number of votes cast in 1991 was 21,189, ten percent of which equals 2,118. Since respondents determined that relators' petition as originally filed contained 2,227 valid signatures, *Citizens for Responsible Taxation, supra,* 65 Ohio St.3d at 167, 602 N.E.2d at 616, relators' petition actually contained one hundred nine signatures more than necessary.

On February 3, 1993, counsel for relators wrote to respondents requesting, in light of the miscalculated signature requirement, that the levy decrease issue be submitted to the electorate at the 1993 general election. In their reply submitted through counsel, respondents conceded their mistake and that the issue "would have been submitted to the voters" if they had realized the error. However, respondents also stated:

"There simply is no statutory mechanism for the Board to reconsider its earlier determination on the validity of the petitions or to initiate that process through correspondence. Nor are there any statutory provisions which would permit the Board to review or amend its prior actions. This is particularly true where those actions have been contested in Court [*sic*] and upheld to be valid as a matter of law. In essence, your request to have the Board reopen the issue would have it modify a decision of the Ohio Supreme Court, something it obviously cannot do."

Relators move for relief from the judgment in *Citizens for Responsible Taxation* pursuant to Civ.R. 60(B)(1) and (5). Civ.R. 60(B) states, in part:

"On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time for a new trial under Rule 59(B); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (5) any other reason justifying relief from the judgment."

To prevail on a motion filed pursuant to Civ.R. 60(B), the movant must demonstrate:

"(1) [T]hat the party is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); (2) that the party has a meritorious defense or claim

to present if relief is granted; and (3) that the motion is made within a reasonable time. * * * [Citations omitted.] The above three requirements are independent and in the conjunctive. Unless each of the three is satisfied, relief must be denied. * * * [Citations omitted.]" *Volodkevich v. Volodkevich* (1988), 35 Ohio St.3d 152, 153, 518 N.E.2d 1208, 1210, reconsideration granted in part (1988), 36 Ohio St.3d 612, 522 N.E.2d 521.

Relators have satisfied this standard. The parties agree that they stipulated to a material fact in error, which should constitute a mistake under Civ.R. 60(B)(1). The parties also agree, in effect, that relators would have been entitled to have the levy decrease placed on the 1992 general election ballot if the mistake had not been made. Finally, the parties do not dispute the timeliness of relators' motion.

Moreover, Civ.R. 60(B) is a remedial rule that is to be liberally construed with a view for effecting a just result. *Colley v. Bazell* (1980), 64 Ohio St.2d 243, 248, 18 O.O.3d 442, 445, 416 N.E.2d 605, 609; *Rose Chevrolet, Inc. v. Adams* (1988), 36 Ohio St.3d 17, 21, 520 N.E.2d 564, 567. Where both parties are mistaken about a material fact that would have established the underlying claim for relief, justice requires that the parties be relieved of the judgment that denied such relief.

Relators, however, want more than just relief from the judgment in *Citizens for Responsible Taxation*—they also want us to order that the levy decrease appear on the 1993 general election ballot. In essence, relators are renewing their request for a writ of mandamus, which requires proof that they are entitled to this relief.

When a court finds that a movant has satisfied the Civ.R. 60(B) standard for granting relief from a prior judgment, the court is ordinarily to vacate or suspend the judgment pending a trial on the merits of the issues raised. *Livingstone v. Rebman* (1959), 169 Ohio St. 109, 8 O.O.2d 109, 158 N.E.2d 366, paragraphs two and three of the syllabus; *Matson v. Marks* (1972), 32 Ohio App.2d 319, 326–327, 61 O.O.2d 476, 480–481, 291 N.E.2d 491, 497; *Society Natl. Bank v. Val Halla Athletic Club & Recreation Ctr., Inc.* (1989), 63 Ohio App.3d 413, 418, 579 N.E.2d 234, 238. See, also, *DeSantis v. Hobbs* (Oct. 1, 1991), Franklin App. No. 91AP–509, unreported, 1991 WL 224178. Here, however, there are no issues of fact to try. As mentioned, respondents agree that relators' petition contained more than the number of valid signatures needed to submit the levy decrease to voters under R.C. 5705.261. Thus, we have no obligation to receive further evidence in this case.

Accordingly, we turn to whether the standard for a writ of mandamus has been satisfied. For the writ to issue, we must find (1) that respondents have a clear legal duty to place the proposed levy decrease on the 1993 general election ballot, (2) that relators are entitled to performance of this duty, and (3) that relators

have no adequate remedy in the ordinary course of law. *State ex rel. Hodges v. Taft* (1992), 64 Ohio St.3d 1, 3, 591 N.E.2d 1186, 1188.

To establish their right to respondents' performance of the duty alleged, relators argue that R.C. 5705.261 continues to require an election on the levy decrease even though the 1992 general election, the election for which their petition was initially filed, is over. Their argument has merit.

R.C. 5705.261 imposes three time requirements for holding an election on a levy decrease issue. The first refers to when the initiating petition must be filed:

"The question of decrease of an increased rate of levy approved for a continuing period of time by the voters of a subdivision may be initiated by the filing of a petition with the board of elections of the proper county *not less than seventy-five days before the general election in any year* requesting that an election be held on such question." (Emphasis added.)

The second time requirement describes when the election is to be held, that is:

"*After determination by it that such petition is valid,* the board of elections shall submit the question to the electors of the district *at the next succeeding general election.*" (Emphasis added.)

The third time requirement in R.C. 5705.261 provides that only one petition challenging a levy increase may be filed within the five-year period following voter approval of the levy. Relators do not mention it, but this provision may explain why they have asked to be relieved of the judgment in *Citizens for Responsible Taxation* and have not filed another petition to place this levy decrease on the 1993 general election ballot. Relators have already filed the single petition for which the statute allows for this five-year period.

Relators' petition was filed on August 20, 1992, seventy-five days or more before the 1992 and the 1993 general elections. Moreover, although respondents may not have declared the petition valid in any formal sense, they have, at some level, determined it to be sufficient since the 1992 election. Thus, R.C. 5705.261 could be read to require submission of the levy decrease to voters "at the next succeeding general election," or on the November 1993 ballot.

This reading of R.C. 5705.261 allows a board of elections to reconsider and correct its mistakes. However, it also leaves the statute open-ended, as the board is not absolutely required to determine the sufficiency of petitions filed before the seventy-five-day deadline in time for that general election. Without this obligation, the board has discretion to consider the petition as long it deems necessary and, in effect, to choose the election at which the issue proposed in a valid petition will appear on the ballot. Depending on the size of the signature requirement and other business before the board, this process could push an election into the future and away from the time at which voter interest in the

issue was measured by the signature requirement in R.C. 5705.261, *i.e.,* "ten per cent of qualified electors residing in the subdivision and voting at the last general election" before the petition was filed.

A similar problem might result from allowing boards of election to reconsider the validity of a levy decrease petition after the election for which it was intended. Absent an absolute deadline for determining petition sufficiency, reconsideration could occur any time a mistake was discovered. Whether the board realizes its mistake ten days or ten years later, its determination would again revive the duty in R.C. 5705.261 to submit the issue "at the next succeeding general election."

Relators cite *State ex rel. Ilg v. Myers* (1933), 127 Ohio St. 171, 187 N.E. 301, in which an initiative petition proposing a constitutional amendment was challenged for having failed the signature requirement in Sections 1a and g, Article II, Ohio Constitution (ten percent of the "votes cast for the office of governor at the last preceding election therefor"). The *Ilg* petition was filed the day before the 1932 gubernatorial election and had to be supplemented with additional signatures afterward. The relators argued that the 1932 election determined the signature requirement, whereas the Secretary of State found the petition valid by referring to the 1930 gubernatorial election. The court agreed with the secretary's decision, holding that under Section 1g, Article II, Ohio Constitution, the signature requirement was determined according to votes cast in the 1930 gubernatorial election that preceded the filing of the petition, not the 1932 gubernatorial election that preceded the filing of the supplementary signatures. A writ to prohibit an election on the constitutional amendment, therefore, was denied.

According to relators, *Ilg* holds that "an intervening election does not change the signature requirement." The petition in that case, however, was filed pursuant to Section 1a, Article II, Ohio Constitution, which requires submission of the proposed constitutional amendment to voters "at the next succeeding regular or general election in any year occurring *subsequent to ninety days after the filing of [a valid] petition.*" (Emphasis added.) Thus, *Ilg* holds that an intervening election does not change the signature requirement, provided the petition is filed within ninety days of a general election. However, if such a petition were to be filed prior to that ninety-day period, Section 1a, Article II, Ohio Constitution, does not allow an intervening election to pass before the proposed amendment must be placed on the ballot.

*Ilg,* therefore, does not support the open-ended reading of R.C. 5705.261 that relators advocate here. We have said, however, that initiative and referendum laws are to be construed liberally in favor of these reserved rights, *Hodges, supra,* 64 Ohio St.3d at 5, 591 N.E.2d at 1189. Moreover, since absolute election day deadlines are unambiguously imposed by Section 1a, Article II, Ohio Consti-

tution and at least one analogous initiative statute, we are convinced that R.C. 5705.261 allows a less rigid result.

As mentioned, Section 1a, Article II, Ohio Constitution requires submission of an initiative proposal at the first general election occurring subsequent to ninety days after a petition is filed with Secretary of State. Similarly, R.C. 731.28 requires submission of an initiative proposal at the first general election occurring subsequent to seventy-five days after the petition is certified to the board of elections. These laws establish deadlines for determining the sufficiency of petitions and placing issues on the ballot by tying the election to an act that is not the election-holding entity's responsibility to perform. R.C. 5705.261, in contrast, ties a levy decrease election to the board of election's determination that the petition was valid, which implies that the board may submit the proposed decrease at its discretion.

Thus, without a more definitive expression of legislative intent, we are inclined to construe R.C. 5705.261 broadly and allow the election sought by relators. Accordingly, we hold that respondents have a duty under this statute to place the proposed levy decrease on the ballot even though the 1992 election is over. Moreover, since relators are apparently not now able to file another petition under R.C. 5705.261, and respondents do not dispute that relators are without an adequate remedy, we also hold that a writ of mandamus is appropriate in this case. Respondents are, therefore, ordered to submit the levy decrease issue to voters at the 1993 general election.

Thus, relator's motion for relief from judgment is sustained, and the writ of mandamus is hereby granted.

*Motion sustained*
*and writ granted.*

MOYER, C.J., A.W. SWEENEY, DOUGLAS, WRIGHT, RESNICK, F.E. SWEENEY and PFEIFER, JJ., concur.