WOURMS, Appellant,

v.

WOURMS, Appellee.

[Cite as *Wourms v. Wourms,* 166 Ohio App.3d 519, 2006-Ohio-1968.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 21086.

Decided April 21, 2006.

James R. Kirkland, for appellant.

Michael A. Hochwalt, for appellee.

GRADY, Presiding Judge.

{¶ 1} Plaintiff, Barbara L. Wourms, appeals from an order of the domestic-relations division of the court of common pleas, denying her Civ.R. 60(B) motion to vacate a property division order in a decree of divorce.

{¶ 2} Barbara L. Wourms and Robert Wourms were married in 1972. On November 21, 2002, Barbara[1] filed a complaint for divorce. Robert filed an answer and counterclaim.

{¶ 3} In the ensuing negotiations, the parties signed a written agreement providing for division of their marital assets and liabilities, including their interests in two real properties. The agreement, which is dated May 18, 2003, states as follows:

{¶ 4} "2. Equity split 50% at current market value provides exactly $146,000 (half [of] approx $230,000 + $56,000) to Plaintiff no later than September 30, 2003. This comes from two sources:

{¶ 5} "a. Condo in Alexandria, Virginia, equity $230,000—Current Market Value of $530,000 minus $269,614* mortgage (Citicorp account XXXX100580–3) minus 5.5% real estate commission minus $1,200 closing costs

{¶ 6} "b. Town House in Aurora Colorado equity $55,628—Current Market Value of $120,000 minus $24,735* mortgage (Citicorp account XXXX674–7) minus 6.0% real estate commission minus $1,000 closing costs minus 33% federal and state income tax."

{¶ 7} A final hearing on the parties' divorce action was held on July 31, 2003. It appears that the terms of their agreement concerning division of their Virginia and Colorado properties were recited into the record. An agreed final judgment and decree of divorce was issued on September 16, 2003. It adopts the foregoing provision and provides:

{¶ 8} "IT IS FURTHER ORDERED AND AGREED that the parties are the owners of a condominium in Alexandria, Virginia and a townhouse in Aurora, Colorado. Each party shall be entitled to a 50% division of total properties, at current market value, which is $168,000 to the Plaintiff with this being one-half of $248,936.00 being the equity in the Virginia property and $87,065.00 being the equity in the Aurora, Colorado property. This shall be paid to the Plaintiff once the property is liquidated, which should be no later than October 31, 2003."

{¶ 9} On July 27, 2004, Barbara filed a motion to vacate the foregoing provision of the divorce decree pursuant to Civ.R. 60(B). Barbara argued that the value of $530,000 for the condominium in Alexandria, Virginia to which the parties had agreed was a mutual mistake of fact, Civ.R. 60(B)(1), and/or that newly-discovered evidence that could not have been discovered in time to move for a new trial, Civ.R. 60(B)(2), demonstrates that the agreed valuation was incorrect. Barbara argued that the Virginia condominium's true value was $615,000. Therefore, and based on the division of the condominium's "current market value" ordered in the

---

1. For clarity and convenience, the parties are identified by their first names.

decree, she is entitled to have one-half the $85,000 difference, or $42,600. The motion was referred to a magistrate for hearings and a decision.

{¶ 10} The only witness who testified at the magistrate's hearings was Robert. He explained that the parties had originally considered a 50/50 split of all their net assets after paying all their liabilities, but that in subsequent negotiations it was agreed that he would take the assets and, after sale or refinance of the Colorado and Virginia properties, apply the net proceeds to pay the joint debts and pay Barbara an agreed dollar amount as her share. For that purpose, the parties valued the Virginia property at $530,000, based on a real estate agent's estimate of its market value. Those were the terms that were explained to the court at the July 31, 2003 final hearing and which the court adopted in its September 16, 2003 decree of divorce.

{¶ 11} Robert further testified that after the final hearing, on approximately August 15, 2003, he made application to a mortgage company to refinance the existing debt of approximately $269,000 on the Virginia condominium in order to generate funds to pay the debts and Barbara her share for the property. The mortgage company ordered an appraisal prepared.

{¶ 12} The written appraisal, Plaintiff's Exhibit 4, states that the "estimated market value of the property as of August 15, 2003 is $615,000."

{¶ 13} The written appraisal report is dated August 19, 2003. Robert testified that he didn't get a copy of the appraisal report "when it was done." He testified that he learned of the higher value stated in the report when "sometime in the whole [refinancing] process I got copies of all the closing costs and the appraisal was included in there," which was in the "November [2003] time frame." Closing on the refinancing was on November 21, 2003.

{¶ 14} Robert also testified that he believed that the $615,000 estimated value was overstated because it relied on comparable sales prices for similar units in the same high-rise building that were on higher floors and were much more expensive for that reason. Nevertheless, when given the opportunity, he refinanced at that higher price to obtain greater proceeds to pay the debts and pay Barbara her share, which was based on the earlier agreed value of $530,000. Robert further testified that even that amount ($530,000) was higher than the range of estimates the parties had been given by the real estate agent on whose opinion they relied, but he agreed to it at Barbara's request. He also testified that the Colorado property sold for $3,000 less than the value to which the parties had agreed, producing a loss to him based on their agreement.

{¶ 15} The magistrate rejected Barbara's claim of mistake, Civ.R. 60(B)(1), pointing out that she made a rational choice when she elected to value the property at $530,000, that the appraised value of $615,000 for purpose of

refinancing was probably inflated or overstated, and that the $615,000 appraisal did not conclusively demonstrate what the property's market value is. The magistrate also rejected Barbara's Civ.R. 60(B)(2) claim of newly discovered evidence because she could have discovered the evidence through her own appraisal. Finally, the magistrate rejected a Civ.R. 60(B)(5) claim Barbara also raised, finding that more specific sections of Civ.R. 60(B) apply and that the higher valuation Robert obtained when he refinanced the property was not a matter beyond Barbara's knowledge or control.

{¶ 16} Barbara filed timely objections to the magistrate's decision. The trial court overruled her objections, finding that the parties' written agreement that was read into the record at the July 31, 2003 final hearing became binding on the parties when incorporated into the decree. The court then adopted the magistrate's decision. Barbara filed a timely notice of appeal.

## ASSIGNMENT OF ERROR

{¶ 17} "The trial court abused its discretion in overruling Mrs. Wourms 60(B) motion because she fulfilled all of the requirements of rule 60(B)."

{¶ 18} As an initial matter, we note that any binding effect the parties' agreement has because it was incorporated into the decree does not insulate the decree from application of Civ.R. 60(B). The decree is a final order or judgment, and Civ.R. 60(B) allows the court to vacate final judgments or orders on the criteria that the rule requires. Those criteria are: "(1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) the motion is made within a reasonable time, and, where the grounds of relief are Civ.R. 60(B)(1), (2), or (3), not more than one year after the judgment, order, or proceeding was entered or taken." *GTE Automatic Elec. Inc. v. ARC Industries, Inc.* (1976), 47 Ohio St.2d 146, 1 O.O.3d 86, 351 N.E.2d 113, paragraph two of the syllabus.

{¶ 19} The first and third prongs of the rule set forth in *GTE Automatic Elec.* are not in issue. The only question is whether Barbara is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5). Barbara relies on three of those grounds.

{¶ 20} First, Barbara relies on Civ.R. 60(B)(1) to argue that the $530,000 value for the Virginia property, to which the parties agreed and which the trial court later found was the product of a mutual mistake, prevented Barbara from receiving the one-half share of the property's "current market value" that the court awarded her in the decree.

■ {¶ 21} "Where both parties are mistaken about a material fact that would have established the underlying claim for relief, justice requires that the parties be relieved of the judgment that denied such relief." *State ex rel. Citizens For Responsible Taxation v. Scioto Cty. Bd. of Elections* (1993), 67 Ohio St.3d 134, 136, 616 N.E.2d 869. In that case, the parties to a mandamus action stipulated that 2,403 valid signatures were needed to place an issue on the ballot. Because that figure was later determined to be incorrect, and because the minimum number of valid signatures required by statute had actually been submitted, justice required that the parties be relieved of the judgment founded on their stipulation, pursuant to Civ.R. 60(B)(1).

{¶ 22} There is no dispute that when Robert and Barbara agreed that the "current market value" of their Virginia condominium was $530,000, they each knew that the value to which they agreed was material to the amount that Barbara received. The greater the current value, the greater the amount of Barbara's share. However, that value is not objective fact, as was the necessary minimum number of valid signature in *Citizens For Responsible Taxation*. It was, instead, a subjective opinion of a real estate agent from whom the parties obtained the figure, and, upon the parties' adoption of it, it became their subjective opinion as well.

{¶ 23} As the record shows, there is no one, undisputable "current market value" for the property. It could be any amount proffered on an opinion or an offer. The subsequent $615,000 appraisal could be evidence of a greater valuation, but it does not demonstrate that the parties were mistaken in their opinion, especially as an appraisal for purposes of refinancing may not reflect the price on which a willing buyer and a willing seller necessarily would agree.

■ {¶ 24} Next, Barbara argues that she was entitled to relief pursuant to Civ.R. 60(B)(3) because of Robert's misinterpretation or nondisclosure of the $615,000 appraisal before the decree of divorce was granted.

{¶ 25} There is no evidence that Robert was aware of the $615,000 appraisal on September 16, 2003, when the decree was granted, or on July 31, 2003, when the final hearing was held. R.C. 3105.171(B) requires an equitable division of marital property, that being property that the parties acquired during the marriage, which is determined on the date of the final hearing. R.C. 3105.171(A)(2)(a) and (A)(3). Both parties agreed that the current value of the Virginia property was then $530,000, and there is no evidence that Robert learned of the higher $615,000 appraised value until after the final decree had been granted. We see no basis on which to find misrepresentation or nondisclosure.

{¶ 26} Finally, Barbara argues that Civ.R. 60(B)(4) applies because it is no longer equitable to divide the parties' interest in the Virginia property due to the

way in which the property was valued. Barbara again argues that Robert's alleged misrepresentation or nondisclosure operates to deny her the full share to which she is entitled by the decree. Barbara relies on *Longstreet v. Longstreet* (1989), 57 Ohio App.3d 55, 566 N.E.2d 708.

{¶ 27} In *Longstreet,* which involved a dissolution proceeding, the husband had represented to the wife that the marital residence was worth $50,000. It was valued as such in their separation agreement and decree of dissolution, and was awarded to the husband, presumably in exchange for other assets. Fourteen months later, he sold the property for $79,000. The former wife filed a Civ.R. 60(B) motion, asking the court to vacate the division ordered in the decree. The evidence showed that the former wife had been treated in psychotherapy and that the attorney who represented the parties was retained by the former husband. The appellate court found that the former wife was entitled to relief pursuant to Civ.R. 60(B)(4) and (5), and held as follows:

{¶ 28} "Where both spouses are represented by the same attorney in a dissolution of marriage, a spouse's material nondisclosure of the value of the marital home is sufficient ground under Civ.R. 60(B)(5) to obtain relief from the judgment." Id. at the syllabus.

{¶ 29} There are at least two distinctions between the present case and the facts and holding in *Longstreet.* First, and most significantly, both parties in the present case were represented by their own attorney. Second, *Longstreet* involved a dissolution proceeding, in which the separation agreement is instrumental to the decree, R.C. 3105.63, while the present case involved a divorce. The difference between the two proceedings and the obligation of the parties concerning the proceeding was discussed in *In re Murphy* (1983), 10 Ohio App.3d 134, 10 OBR 184, 461 N.E.2d 910, which nevertheless offers some useful guidance on these questions.

{¶ 30} In *Murphy,* which involved a dissolution proceeding, the husband was fully aware of the nature, extent, and value of the marital assets, but the wife was not. The spouses executed a separation agreement prepared by the husband's attorney. The agreement disposed of less than 30 percent of the value of their joint assets. Of the assets not so disposed, almost all were retained by the husband. As a result, after the decree of dissolution adopting the separation agreement, the husband had 82 percent of the marital property and the wife had 18 percent.

{¶ 31} When the wife realized what her situation was, she retained an attorney who filed for Civ.R. 60(B) relief. The domestic-relations court granted the motion and vacated the property division order in the decree. On appeal, the Hamilton County Court of Appeals affirmed, noting the instrumental role of a

separation agreement in a dissolution proceeding. The court further stated as follows:

{¶ 32} "Among the factors to be considered by the trial court in determining whether relief from a decree of dissolution based on an incomplete separation agreement should be granted under Civ.R. 60(B) in the first instance (factors that will also be used by a reviewing court in determining whether the trial court abused its discretion) are the following: what caused the delay in making the motion; whether the delay was reasonable; what personal knowledge the movant had about the nature, extent and value of all the marital assets (whether included or omitted); what the movant should have known about them in the exercise of ordinary care; whether the movant expressly or implicitly concurred in the property provisions of the separation agreement; what deceptions, if any, were used by the other spouse; and what has intervened between the decree and the motion (such as, remarriage of either spouse or both spouses)." Id. at 138, 10 OBR 184, 461 N.E.2d 910.

{¶ 33} The present case involves not a dissolution but a divorce, which is an adversarial proceeding in which the parties are expected to protect their own interests. Nevertheless, when parties make an agreement concerning division of their marital property interests, the parties are charged with a duty of good faith and fair dealing with each other and with the court, which is required to divide their interests equitably. R.C. 3105.171(B). Any information either has that is material to the nature, extent, and value of their marital-property interests should be disclosed to the other party. Failure to do that may be the basis for subsequent Civ.R. 60(B) relief, in which the considerations that *Murphy* pointed out are relevant to deciding whether relief should be granted.

{¶ 34} On the record of the present case, we find no basis to conclude that the domestic-relations court abused its discretion when it overruled Barbara's motion for Civ.R. 60(B) relief. Both Barbara and Robert believed, or at least agreed, that the current value of the Virginia condominium was $530,000 when they made their agreement, and they later proffered the agreement at the July 31, 2003 final hearing. A flat amount was adopted to insure that Barbara would receive a stated dollar amount as her share. Robert did not learn until after the decree was granted that he could realize more for the property. Whatever additional sum he reaped could be attributable to the volatile nature of the real-estate-mortgage market than to any actual current market value for purposes of sale. Barbara was represented by an attorney through the proceedings and could have acted to protect her interests by obtaining a more competent appraisal. She did not, and cannot now claim that she was shortchanged by the agreement she made.

{¶ 35} The assignment of error is overruled. The judgment of the domestic-relations court is affirmed.

Judgment affirmed.

FAIN and DONOVAN, JJ., concur.