[Cite as *Ross v. Olsavsky*, 2010-Ohio-1310.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| JACK ROSS, et al., | ) | |
| | ) | CASE NO.    09 MA 95 |
| PLAINTIFFS-APPELLEES, | ) | |
| | ) | |
| - VS - | ) | O P I N I O N |
| | ) | |
| LINDA OLSAVSKY, | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS:     Civil Appeal from County Court No. 5,
                             Case No. 07CVF132CNF.

JUDGMENT:                    Affirmed.

APPEARANCES:
For Plaintiffs-Appellees:       Attorney Edward Saadi
                               970 Windham Court, Suite 7
                               Boardman, Ohio  44512


For Defendant-Appellant:        Attorney Martin Hume
                               6 Federal Plaza Central, Suite 905
                               Youngstown, Ohio  44503


JUDGES:
Hon. Joseph J. Vukovich
Hon. Cheryl L. Waite
Hon. Mary DeGenaro

                                        Dated:  March 25, 2010

VUKOVICH, P.J.

¶{1} Defendant-appellant Linda Olsavsky appeals the decision of Mahoning County Court No. 5 denying her motion to vacate the July 27, 2007 default judgment issued against her. Three issues are raised in this appeal: 1) whether Olsavsky was properly served with the complaint, 2) whether the trial court abused its discretion in denying Olsavsky's Civ.R. 60(B) motion, and 3) whether the trial court erred when it permitted the attorney for plaintiffs-appellees Jack and Barbara Ross to represent them when the attorney could also have been called as a witness during the hearing. For the reasons expressed below, we find no merit with any of Olsavsky's arguments and thus, the judgment of the trial court is affirmed.

<u>STATEMENT OF CASE</u>

¶{2} In March 2006, Jack and Barbara Ross (Ross) and Olsavsky entered into a land installment contract for the real property located at 200 Indian Lake Boulevard, Canfield, Ohio. Olsavsky allegedly fell behind on the payments and in February 2007, she voluntarily vacated the premises. While she was vacating the premises, the electric was turned off, which caused a pipe to burst and resulted in damage to the premises.

¶{3} Thereafter, on April 18, 2007, Ross filed a compliant against Olsavsky seeking $5,910.90 for the delinquent payments on land installment contract and $6,395.75 for the damages caused by the burst pipe. The complaint was served by certified mail to an address Olsavsky admitted she resided. The certified card was signed, however, it was not signed by Olsavsky.

¶{4} Olsavsky failed to respond to the complaint and on July 25, 2007, Ross filed a Motion for Default Judgment. On July 27, 2007, the court granted the motion and a judgment for $12,306.65 was ordered in the Ross' favor. In August 2007, there was a notice of garnishment of property filed, in which Ross attempted to obtain the judgment from Olsavsky's bank account. The bank returned the notice indicating that judgment could not be fulfilled because on May 20, 2007, Olsavsky had filed bankruptcy. Attached to the notice is a document from the Bankruptcy Court indicating that claims had to be filed by September 25, 2007. Both parties admit that Ross filed a claim in the bankruptcy case.

¶{5}  Following completion of the bankruptcy case and after her wages were already being garnished, Olsavsky filed a Motion to Vacate the Default Judgment in February 2009.  In the motion, Olsavsky argued that the judgment was void ab initio because she was never properly served.  As an alternative, she argued that Civ.R. 60(B)(4) or (5) were applicable and justified relief from the default judgment because the damages sought for the flood damage to the premise were already paid by insurance.  Thus, she contended that allowing her wages to be garnished to pay for the damages was allowing double recovery.

¶{6}  Ross opposed the motion to vacate claiming that after service of the complaint, Olsavsky telephoned Ross' counsel in June 2007 and acknowledged the pendency of the suit.  This claim was supported by an affidavit from Ross' attorney that avowed that Olsavsky called him in June 2007 about the complaint.  As such, Ross asserted that service was proper and that the default judgment was not void.  In the alternative, they claimed that relief under Civ.R. 60(B)(4) or (5) was not warranted because Olsavsky had no meritorious defense, she was not entitled to relief under Civ.R. 60(B)(4) or (5) and the motion for relief was not timely made.

¶{7}  A hearing was held on the motion to vacate.  At the hearing, Olsavsky moved to have Ross' attorney disqualified because he would likely be a possible witness at the hearing.  The trial court found that the attorney could proceed as counsel.

¶{8}  "I'm going to – in terms of the initial matter, Counsel, (inaudible) I'm going to allow you to proceed, Counsel, as the attorney of record (inaudible) based on the fact that I do agree that your testimony will be of a limited nature (inaudible) relative to the merits of the motions."  04/10/09 Tr. 6.

¶{9}  After hearing testimony and each parties' arguments, the trial court denied the motion to vacate.  Olsavsky timely appeals.

<u>FIRST ASSIGNMENT OF ERROR</u>

¶{10} "THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO FIND THAT THE JUDGMENT OBTAINED AGAINST OLSAVSKY WAS VOID AB INITIO."

¶{11} Under Rule 3(A) of the Ohio Rules of Civil Procedure, a civil action is commenced by the filing of a complaint if service is completed within a year of that

filing. Absent proper service of process, a trial court lacks jurisdiction to enter a judgment, and if it nevertheless renders a judgment, that judgment is a nullity and void ab initio. *Lincoln Tavern, Inc. v. Snader* (1956), 165 Ohio St. 61, 64; *Tuckosh v. Cummings*, 7th Dist. No. 07HA9, 2008-Ohio-5819, ¶17. The authority to vacate such judgments "is not derived from Civ.R. 60(B) but rather constitutes an inherent power possessed by Ohio courts." *Patton v. Diemer* (1988)*,* 35 Ohio St.3d 68, paragraph four of the syllabus (1988). Thus, the trial court's determination of a common-law motion to vacate does not turn on Civ.R. 60(B)'s requirements that the movant file timely and present a meritorious defense. Id.; *Nationwide Mut. Fire Ins. Co. v. Barrett*, 7th Dist. No. 08MA130, 2008-Ohio-6588, ¶11.

¶{12} We review a trial court's decision to grant or deny a motion to vacate for an abuse of discretion. *Barrett*, 7th Dist. No. 08MA130, 2008-Ohio-6588, ¶10. An abuse of discretion is more than a mere error in judgment; it signifies an attitude on the part of the trial court that is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219.

¶{13} In this case, it is undisputed that the complaint was sent by certified mail and that a signature card was signed and returned to the clerk of courts. Civ.R. 4.1(A) provides that service of process via certified mail is evidenced by a return receipt signed by **any person**. Thus, certified mail can be perfected even though the addressee was not the person to sign the receipt card. *Mitchell v. Mitchell* (1980), 64 Ohio St.2d 49, 50-51; *Castellano v. Kosydar* (1975), 42 Ohio St.2d 107, 110. However, service of process must be made in a manner reasonably calculated to apprise interested parties of the action and to afford them an opportunity to respond. *Akron-Canton Regional Airport Auth. v. Swinehart* (1980), 62 Ohio St.2d 403, 406; *Rokakis v. Estate of Thomas*, 8th Dist. No. 89944, 2008-Ohio-5147, ¶11. Service by certified mail is perfected when it is sent to an address "reasonably calculated to cause service to reach the defendant." *Rokakis*, 8th Dist. No. 89944, 2008-Ohio-5147, at ¶12, citing *Ohio Civ. Rights Comm. v. First Am. Properties* (1996), 113 Ohio App.3d 233, 237.

¶{14} Consequently, since the complaint was sent by certified mail to Olsavsky's address, which she admitted at the hearing was the correct address where she resided, and since the signature card was signed and returned to the clerk of

courts, there is a presumption of valid service. *New Co-Operative Co. v. Liquor Control Comm.,* 10th Dist. No. 01AP-1124, 2002-Ohio-2244, ¶8. However, the presumption of valid service that arises from compliance with the civil rules is rebuttable by sufficient evidence demonstrating non-service. Id. at ¶9, citing *Grant v. Ivy* (1980), 69 Ohio App.2d 40, 42. Ohio courts have repeatedly considered claims of failed service even where service was mailed to the correct address. *TCC Management, Inc. v. Clapp*, 10th Dist. No. 05AP-42, 2005-Ohio-4357, ¶13, citing *New Co-Operative Co.,* 10th Dist. No. 01AP-1124, 2002-Ohio-2244; *Ohio Civ. Rights Comm.*, 113 Ohio App.3d 233 (Second Appellate District); *United Home Fed. v. Rhonehouse* (1991), 76 Ohio App.3d 115 (Sixth Appellate District).

¶{15} Considering the above, we must determine whether Olsavsky has rebutted the presumption that she received service of the complaint.

¶{16} Olsavsky supported her motion to vacate with an affidavit stating that she did not personally receive the complaint and was unaware of the default judgment. The clerk's docket indicates that the signature card was signed by "Mousa Emey." At the hearing on the motion to vacate, Olsavsky admitted that the file contains a signature card that was signed and returned. However, she claimed that she does not know anybody by the signed name on the signature card.[1] (Tr. 12 -14). Thereafter, she acknowledged that her daughter's name is Marissa Emery and that the letters signed on the signature card are similar to her daughter's name. (Tr. 13). She qualified that testimony by adding that she would recognize her daughter's signature and that signature did not "appear" to be her daughter's. (Tr. 13-14). She contends that since there was no testimony at the hearing that disputed her avowed assertion that she never received the complaint the default judgment must be vacated for lack of service.

¶{17} Olsavsky's affidavit is a self-serving affidavit. Courts have held that when there is a self-serving affidavit asserting that the party did not receive the complaint even though there is evidence in the record that service was perfected in a manner in accordance with the civil rules, the trial court is not bound to accept the

---

[1]At the hearing on the motion to vacate, Olsavsky testified that "Musi Imi" (her pronunciation of the name on the signature) was the signature on the card. The clerk's docket and the signature card clearly indicate that it was signed by a "Mousa Emey."

sworn statement, rather it is permitted to assess the credibility and competency of the evidence of non-service. *Clapp*, 10th Dist. No. 05AP-42, 2005-Ohio-4357, ¶15 (holding that the trial court does not have to give preclusive effect to a movant's sworn statement); *Ohio Civ. Rts. Comm.*, 113 Ohio App.3d at 238; *Infinity Broadcasting, Inc. v. Brewer*, 1st Dist. No. C-020329, 2003-Ohio-1022, ¶8 (finding that the trial court is not bound to accept self-serving affidavits or testimony from the defendant that he did or did not receive service); *Old Meadow Farm Co. v. Petrowski* (Mar. 2, 2001), 11th Dist. No. 2000-G-2265; *Christy L.W. v. Chazarea E.S.*, 6th Dist. No. OT-02-019, 2003-Ohio-483, ¶13. As the First Appellate District has explained:

**¶{18}** "[A] trial court is not bound to accept the self-serving affidavit or testimony of a defendant that he or she did not receive service. Accord *Bank One Cincinnati, N.A., v. Wells* (1996), 1st Dist. No. C-950279; *Emge,* supra. Given the ease with which a defendant may make such a self-serving claim, we have held that a trial court is entitled to make a credibility assessment and disbelieve the defendant's claim, particularly where the circumstantial evidence of receipt is compelling. *Alston* and *Emge,* supra. However, as a corollary of the additional latitude we have given the trial court, we have held that a hearing must be afforded to assess the credibility of the defendant's assertion. *Emge,* supra, at 64-65. In other words, a trial court cannot dismiss an allegation of a lack of notice out of hand. At the hearing, provided that the plaintiff has strictly complied with the civil rules regarding service, the burden is on the defendant to prove to the trial court that service was not received. *Id.*" *Brewer*, 1st Dist. No. C-020329, 2003-Ohio-1022, ¶8.

**¶{19}** We agree with the reasoning espoused by our sister districts that the trial court was not bound to accept Olsavsky's self-serving affidavit. Rather, the court was free to assess Olsavsky's credibility and believe or disbelieve her claims.

**¶{20}** Having said that, we acknowledge that Olsavsky would like this court to follow the rationale of the Eighth Appellate District, which has held that "[i]t is reversible error for a trial court to disregard unchallenged testimony that a person did not receive service." *Rafalski v. Oates* (1984)*, 17 Ohio App.3d 65, 67; *Clark v. Marc Glassman, Inc.*, 8th Dist. No. 82578, 2003-Ohio-4660, ¶30-32 (reaffirming its *Rafalski* holding). *Rafalski* and *Clark* are both distinguishable from the case at hand and, as

such, the persuasiveness of their respective holdings are negated when applied to the facts in existence here. In *Rafalski* service of process was sent to an address other than the defendant's. In *Clark* the complaint was sent by certified mail to defendant's employer and was signed for by an employee. However, at the time that the mail was sent and received, defendant was no longer employed by the employer. Thus, like *Rafalski*, service of process was sent to an address other than the defendant's. That is not the case here, where the complaint was sent by certified mail to an address Olsavsky admitted was hers. Consequently, given those facts, we agree with our sister appellate district that *Rafalski* and *Clark* are distinguishable and inapplicable when service of process was sent to the defendant's admitted address. See *Ohio Civ. Rts. Comm.*, 113 Ohio App.3d at 238 (finding *Rafalski* distinguishable).

¶{21} As such, we now turn to the question of whether the trial court abused its discretion in disbelieving Olsavsky's claims of non-service. We do not lightly reverse a trial court's determination regarding credibility. *Seasons Coal Co. v. Cleveland* (1985), 10 Ohio St.3d 77, 80-81 (explaining that deference is given to the trial court to view demeanor, attitude and voice inflections and use those observations in weighing the credibility of the sworn statements). As aforementioned Olsavsky admitted that the address where the complaint was sent to by certified mail was her address. The signature card for the certified mail was signed and Olsavsky admitted her daughter's name, Marissa Emery, is similar to the signature on the receipt card. (Tr. 13). In looking at the signature card it could be determined that the signature is for the name "Marisa Emery" or "Marisa Emey". Admittedly, Olsavsky testified that she would recognize her daughter's signature and that did not "appear" to be her daughter's. Even considering this espoused belief that the signature on the certified card did not "appear" to be her daughter's, we cannot find that the trial court abused its discretion when it did not find that she had overcome the rebuttable presumption of service when considering that the certified mail was sent to her address and signed by a name that is very similar, if not her daughter's. This assignment of error lacks merit.

## SECOND ASSIGNMENT OF ERROR

¶{22} "THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO GRANT RELIEF FROM THE DEFAULT JUDGMENT PURSUANT TO THE PROVISIONS OF OHIO CIVIL RULE 60(B)."

¶{23} As an alternative to the first assignment of error, under this assignment of error Olsavsky contends that the trial court's grant of default judgment is voidable under Civ.R. 60(B). Thus, the analysis under this assignment of error concerns Civ.R. 60(B) and its requirements for vacating a default judgment.

¶{24} A motion filed pursuant to Civ.R. 60(B) is addressed to the sound discretion of the trial court, and that court's ruling will not be disturbed on appeal absent a showing of an abuse of discretion, i.e., a showing that the trial court's determination was either arbitrary, unreasonable, or unconscionable. *Griffey v. Rajan* (1987), 33 Ohio St.3d 75, 77. In exercising its discretion, a trial court must keep in mind that the policy in Ohio is to decide cases on their merits and to afford Civ.R. 60(B) relief where equitable; Civ.R. 60(B) is a remedial rule that is to be liberally construed with a view toward effecting a just result. *State ex rel. Citizens for Responsible Taxation v. Scioto Cty. Bd. of Elections* (1993), 67 Ohio St.3d 134, 136. Moreover, Civ.R. 60(B) has been viewed as a mechanism to create a balance between the need for finality and the need for "fair and equitable decisions based upon full and accurate information." *In re Whitman* (1998), 81 Ohio St.3d 239, 242.

¶{25} To prevail on a motion brought under Civ.R. 60(B), the moving party must show that: (1) he or she has a meritorious defense or claim to present if relief is granted; (2) he or she is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) the motion is made within a reasonable time, and, where the grounds of relief are Civ.R. 60(B)(1), (2), or (3), not more than one year after the judgment, order or proceeding was entered or taken. *GTE Automatic Electric v. ARC Industries* (1976), 47 Ohio St.2d 146. If any one of the three *GTE* requirements is not met, the motion should be overruled. *Rose Chevrolet, Inc. v. Adams* (1988), 36 Ohio St.3d 17, 20.

¶{26} The *GTE* factors are addressed in reverse order starting with the time requirement. As aforementioned, the Civ.R. 60(B) motion was based upon subsection

(4) and/or (5). Thus, the motion to vacate was not required to be brought within one year of the default judgment, but rather was required to be brought within a reasonable time.

¶{27} It has been explained that what is reasonable under the circumstances depends on the facts of each case. *Colley v. Bazell* (1980), 64 Ohio St.2d 243, 249-250. When a movant is aware that there are grounds for relief and delays filing the motion, the courts will require the movant to explain the reasons for the delay. *Pursel v. Pursel*, 8th Dist. No. 91837, 2009-Ohio-4708, ¶15, citing *Kaczur v. Decara,* 8th Dist. No. 67546, 1995-Ohio-3038 (Civ.R.60(B) motion untimely filed when movant offered no reasonable explanation for a nine month delay in filing the motion) and *Drongowski v. Salvatore,* 8th Dist. No. 61081, 1992-Ohio-5027 (eleven month delay in filing Civ.R. 60(B) motion held untimely because movant failed to provide any explanation).

¶{28} Hence, the focus for determining timeliness under Civ.R. 60(B) is when Olsavsky became aware of the default judgment, when she filed the motion to vacate, and was the reason for the delay between those two dates reasonable.

¶{29} Olsavsky claims that the reason the motion to vacate default judgment was filed approximately one year and ten months after the default judgment was entered was because she was not aware of the judgment against her until shortly before filing the motion to vacate in February 2009.

¶{30} Her contention, however, flies in the face of the established facts of this case which clearly show that she had multiple notices of the default judgment.

¶{31} It can be concluded that she knew of the default judgment from her May 2007 bankruptcy action. At the hearing on the motion to vacate default judgment, she admitted that she was aware that Ross had filed a claim in that bankruptcy action. (Tr. 22). The record is not clear when the claim was filed in bankruptcy court, but there is a notice from the bankruptcy court which indicates that all claims had to be filed by September 25, 2007. If it was done by that time, then Olsavsky was aware of the claim for seventeen months prior to filing the motion to vacate. Or at the latest, she would have had knowledge of the claim in July 2008, when the bankruptcy petition was dismissed, which is still seven months prior to the filing of the motion to vacate.

**¶{32}** She also had notice of the default judgment when Ross filed a motion to intervene in April 2008 in the federal case she filed against her former employer. (Tr. 23-25). In intervening, Ross filed a creditor's bill that was based on the default judgment in this case. She also stipulated that in October 2008 in that federal case, Ross filed a motion for default on the creditor's bill and that she ignored that motion and default was entered against her. (Tr. 25). From that testimony, it can be determined that at least from April 2008, she knew of the claim, which was ten months prior to the motion to vacate.

**¶{33}** Lastly, she admitted that she called Ross and their attorney in September 2008 to discuss the default judgment.

**¶{34}** "I'm going to say that the – with all these documents from what I can remember at the point in time it was – I don't know if it was what you call the debtor's exam perhaps. I travel quite a bit for work and I realized it and looked at it and I had already missed the date and I called the court and it was too late to do anything about it. I believe that's when I started contacting yourself and Mr. Ross. That's the best – I believe it was that document that obviously got my attention and I had already missed the date." (Tr. 26).

**¶{35}** The debtor's examine was scheduled for September 12, 2008 and the record shows she failed to appear at that hearing even though it was served by certified mail and she signed for it. This admitted September 2008 notice was five months prior to her filing a motion to vacate.

**¶{36}** As can be seen by the above recitation of the notices she had of the default judgment, she had at least three notices of it and those notices ranged between seventeen to five months prior to her filing her motion to vacate default judgment. Moreover, she offers no viable explanation as to why she waited so long to try to vacate the default judgment. Additionally, we note that she was properly served with the complaint and failed to answer it. Consequently, we find that the trial court did not abuse its discretion in failing to grant the Civ.R. 60(B) motion to vacate because the motion to was not filed within a reasonable time.

**¶{37}** Since the third prong of the *GTE* test fails, we do not have to address the remaining prongs. This assignment of error lacks merit.

<u>THIRD ASSIGNMENT OF ERROR</u>

¶{38} "THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DID NOT DISQUALIFY PLAINTIFFS' COUNSEL FROM ACTING AS BOTH A WITNESS FOR PLAINTIFFS AND PLAINTIFFS' COUNSEL."

¶{39} As aforementioned, at the hearing on the motion to vacate default judgment, Olsavsky moved to disqualify Ross' attorney. The motion was denied.

¶{40} We review the trial court's decision on a motion to disqualify for an abuse of discretion. *155 North High Ltd. v. Cincinnati Ins. Co.* (1995), 72 Ohio St.3d 423, syllabus.

¶{41} The Ohio Supreme Court exercises exclusive jurisdiction over the admission of lawyers to practice law in Ohio and over the discipline of those lawyers. *Mentor Lagoons, Inc. v. Rubin* (1987), 31 Ohio St.3d 256, 259-260. That said, trial courts have the "inherent power to disqualify an attorney from acting as counsel in a case when the attorney cannot or will not comply with the Code of Professional Responsibility and when such action is necessary to protect the dignity and authority of the court." *Horen v. City of Toledo Public School Dist.*, 6th Dist. No. L-07-1131, 2007-Ohio-6883, ¶21. "However, because of the potential use of the advocate-witness rule for abuse, disqualification 'is a drastic measure which should not be imposed unless absolutely necessary.'" *Waliszewski v. Caravona Builders, Inc.* (1998), 127 Ohio App.3d 429, 433, quoting *Spivey v. Bender* (1991), 77 Ohio App.3d 17, 22. See, also, *A.B.B. Sanitec West, Inc. v. Weinsten,* 8th Dist. No. 88258, 2007-Ohio-2116, ¶12 (applying the current Rules of Professional Conduct).

¶{42} Here, Olsavsky asserts that pursuant to Prof. Cond. Rule 3.7, Ross' attorney should have been disqualified because he was likely to be a witness. That rule provides:

¶{43} "(a) A lawyer shall not act as an advocate at a trial in which the lawyer is likely to be a necessary witness unless one or more of the following applies:

¶{44} "(1) the testimony relates to an uncontested issue;

¶{45} "(2) the testimony relates to the nature and value of legal services rendered in the case;

¶{46} "(3) the disqualification of the lawyer would work substantial hardship on the client.

¶{47} "(b) A lawyer may act as an advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or 1.9.

¶{48} "(c) A government lawyer participating in a case shall not testify or offer the testimony of another lawyer in the same government agency, except where division (a) applies or where permitted by law."

¶{49} In determining whether an attorney should be disqualified under Prof. Cond. Rule 3.7, the First Appellate District has explained that the trial court must determine if the attorney's testimony is: 1) admissible and 2) necessary. *Brown v. Spectrum Networks, Inc.,* 180 Ohio App.3d 99, 104, 2008-Ohio-6687, ¶15. In determining whether the testimony is necessary, the court must decide whether it is relevant material to the issues being litigated and whether it is unobtainable elsewhere. Id. If the testimony is admissible and necessary, then the court must determine whether any of the exceptions set forth under Rule 3.7 apply. Id. If the testimony is admissible and necessary, but none of the exceptions apply, the attorney must be disqualified. Id.

¶{50} When addressing the above rule, one could plausibly argue that the rule is not applicable in this case because it applies to those situations where an attorney would be called as a witness at trial. Here, Ross' attorney did not have testimony to offer at trial. Rather, his potential testimony would only have been relevant with regard to the issue of service of process, i.e. that Olsavsky received the complaint. His affidavit clearly indicates that he claims Olsavsky called him in June 2007 after receiving the complaint and left him her cellular telephone number.

¶{51} However, an interpretation of Rule 3.7 is not required here as the facts of this case adequately provide support that service of process was perfected without regard to the testimony of the rival litigant's attorney. As discussed under the first assignment of error, the complaint was sent by certified mail to appellant's admitted home address and that the certified card was signed. Thus, there was a rebuttable presumption that Olsavsky received the complaint. *New Co-Operative Co.*, 10th Dist.

No. 01-AP-1124, 2002-Ohio-2244, at ¶8, citing *Grant*, 69 Ohio App.2d at 42. It was Olsavsky's burden to rebut that presumption. Olsavsky did not rebut that presumption; the trial court found her self-serving affidavit that she did not receive the complaint incredible when the signature card showed a signature similar to Olsavsky's daughter. Thus, the affidavit and/or testimony from Olsavsky's attorney was not needed to determine whether Olsavsky received the complaint. Therefore, even if Rule 3.7 of the Rules of Professional conduct was appealable, it did not warrant disqualification of Ross' attorney. This assignment of error lacks merit.

## CONCLUSION

**¶{52}** For the foregoing reasons, the judgment of the trial court regarding the denial of her motion to vacate based on both lack of service and Civ.R. 60(B) is hereby affirmed.

Waite, J., concurs.
DeGenaro, J., concurs.